## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GRACE CHEN and DANIELLE VILLARREAL, individually and on behalf and all others similarly situated, | Case No.  1:23-cv-1129 |
| Plaintiffs | CLASS ACTION COMPLAINT FOR INJUNCTIVE AND EQUITABLE RELIEF; MONETARY DAMAGES; AND JURY DEMAND |
| v. | |
| HILLSDALE COLLEGE | |
| Defendants. | |

Plaintiffs Grace Chen and Danielle Villarreal, individually and on behalf of other similarly situated Hillsdale College students, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, the following:

### INTRODUCTION

Despite holding itself out as a safe space that "maintains 'by precept and example' the immemorial teachings and practices of the Christian faith,"[1] Hillsdale College has deliberately fostered a campus environment that exposes students to an unacceptable and unusually high risk of sexual assault. When brave students report their experiences of sexual assault to school officials, they are met not with support, but with sham investigations, arbitrary decisions, and punishments. In response to calls for transparency and accountability, Hillsdale instead silences and threatens survivors, blaming them, not their assailants for their assaults.

Plaintiffs Chen and Villarreal were both subjected to—and harmed by—this toxic environment.  While students at Hillsdale, both women were raped by peers. When they reported

---

[1] Hillsdale College, *Mission Statement*, https://www.hillsdale.edu/about/mission/.

their rapes to Hillsdale, seeking support and accountability, they instead faced phony investigations, retaliation, and blame for being raped. Plaintiff Grace Chen, a current Hillsdale junior and track athlete, was raped by a fellow Hillsdale track athlete in November 2021 of her freshman year. Although she reported the rape to Hillsdale authorities, the school Hillsdale failed to thoroughly investigate the crime, refused to protect her from her assailant and did not explain its investigation findings in writing. Plaintiff Chen continued to have to see her rapist multiple times a week at track-related events and in a ten-person class they attended together during the fall 2022 semester. Plaintiff Danielle Villarreal was a Hillsdale student when she was raped by a fellow Hillsdale student on August 29, 2021. Plaintiff Villarreal reported the rape to the police and sought support from Hillsdale. Hillsdale backtracked on its initial indication that it believed her, refused to put anything in writing, blamed Plaintiff Villarreal for her rape, and threatened her when she followed up about the investigation and penalty. After withdrawing from Hillsdale, Plaintiff Villarreal suffered from depression and sought treatment to cope with the rape and Hillsdale's response.

Plaintiffs are not alone. At Hillsdale, students are at an unusually high risk of sexual assault because Hillsdale fails to have or enforce policies that prevent sexual assault. This is no accident: Hillsdale does not accept government funding in a misguided and ineffective attempt to avoid its obligations under Title IX of the Education Amendments of 1972 ("Title IX").[2] Nevertheless, as a 501(c)(3) institution, Hillsdale receives federal financial assistance in the form of its tax-exempt status, which subjects it to Title IX's obligations.

---

[2] *See* Erik Eckholm, *In Hillsdale College, a 'Shining City on a Hill' for Conservatives*, The New York Times (Feb. 1, 2017), https://www.nytimes.com/2017/02/01/education/edlife/hillsdale-college-great-books-constitution-conservatives.html ("Conservatives are also entranced by Hillsdale's decision to forgo any federal or state funds so as to be 'unfettered' by government mandates. As a result, the college does not follow Title IX guidelines on sex discrimination and the handling of sexual assault cases.").

Moreover, Hillsdale's "sexual misconduct policy"[3] is so deficient that even if the school had enforced it diligently, it still would not have prevented sexual assaults on campus. The policy fails to discuss consent; allocates all of the details of an investigation and punishment to the discretion of the Deans; and fails to guarantee confidentiality for reporting students. Most students at Hillsdale do not even know about the "sexual misconduct policy" or do not believe it applies to them. Students who are aware of the policy have advocated for it to be strengthened; Hillsdale has repeatedly refused. As a result of this institutional failure, students at Hillsdale are vulnerable to sexual assault from their peers. But, Hillsdale also fails to enforce its deficient sexual misconduct policy. When a student reports their sexual assault to the school, Hillsdale conducts incomplete investigations that do not comport with even the minimal requirements of the policy. Hillsdale subjects students brave enough to report their sexual assaults to opaque, specious investigations. When students ask for transparency or further details, Hillsdale blames them for their assault and retaliates with threats. As a consequence, students who report sexual assault suffer twice: the harms of the sexual assault and the harms of the institutional betrayal. What's more, Hillsdale has long been aware that its students are at risk of sexual assault on campus  through numerous reports by students of sexual assault by their peers and student efforts to make the "sexual misconduct policy" more specific.

Plaintiffs bring this action to hold Hillsdale accountable for its violations of the common law, the Michigan Elliot Larsen Civil Rights Act (ELCRA), MCLA 37.2101 *et seq*., the Michigan Consumer Protection Act, MCLA 445.901 *et seq*., and Title IX, 20 U.S.C. § 1681 *et seq.* Because Plaintiff Chen and other current Hillsdale students continue to face a real, immediate, and direct threat of sexual assault and emotional trauma, Plaintiff Chen, on behalf of a class of current

---

[3] Hillsdale College, *Hillsdale College Procedures for Addressing Sexual Misconduct*, https://www.hillsdale.edu/smp/.

Hillsdale students, also seeks injunctive relief to protect current and future Hillsdale students from the current and ongoing risk of sexual assault.

I.    **PARTIES**

    A.    **Plaintiffs**

1.    Grace Chen is a citizen of California who resides in Hillsdale, Michigan during the school year. She has been a Hillsdale student since August of 2021. She is a member of the track team, competing in triple jump and long jump. Plaintiff Chen is currently studying to become a physician's assistant and participates in the Preprofessional Society, the International Club, and the Rehab Sciences Club on campus.

2.    Danielle Villarreal is a citizen of Nebraska. She was a Hillsdale student from August of 2020 to the spring of 2021. At Hillsdale, Plaintiff Villarreal was a Grewcock Scholar who made the Dean's List every semester, played club soccer and was elected Director of Facilities (for club soccer), and was a member of Hillsdale College Democrats and Pi Beta Phi sorority. Plaintiff Villarreal is currently a student at Vanderbilt University and plans to become a lawyer.

    B.    **Defendant**

3.    Hillsdale College, founded in 1844, is a private four-year college located in Hillsdale, Michigan.

II.    **JURISDICTION AND VENUE**

4.    Jurisdiction obtains pursuant to 28 U.S.C. § 1332 based on the diversity of the parties, and pursuant to 28 U.S.C. § 1331 based on Plaintiffs' claims arising under the laws of the United States, including 20 U.S.C. § 1681. As described above, Plaintiff Grace Chen is a citizen of California, Plaintiff Danielle Villarreal is a citizen of Nebraska, and Defendant Hillsdale College is headquartered and operates in Michigan. The amount in controversy in this suit exceeds $75,000.00 exclusive of interest and costs.

5.      This Court has personal jurisdiction over Hillsdale, whose address is 33 E. College Street, Hillsdale, Michigan 49242. Hillsdale has had continuous and systematic contacts with the State of Michigan since its founding in 1844.

6.      Venue lies in this District pursuant to § 1391(a) in that Hillsdale resides in this District and the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## III.   STATEMENT OF FACTS

### A.   Hillsdale represents itself to be a safe and supportive educational space, but lacks supporting policies.

18.     Hillsdale College, a 501(c)(3) registered entity, is a small private college in southern Michigan that prides itself on its conservative Christian values.

19.     Founded by the Free Will Baptists, Hillsdale describes itself as a "nonsectarian Christian institution" that "maintains "by precept and example" the immemorial teachings and practices of the Christian faith."[4]

20.     All Hillsdale dormitories are sex-segregated and the Regulations for Proper Student Contact speak in terms of the school's "high moral standards."[5]

21.     In an attempt to maintain its "independence" from government regulations, Hillsdale "does not accept federal or state taxpayer subsidies for any of its operations"[6] and instead relies on private funding.

22.     Defendant does not follow Title IX guidelines on sex discrimination and the handling of sexual assault cases.[7]

---

[4] Hillsdale College, *Mission Statement*, https://www.hillsdale.edu/about/mission/.
[5] Hillsdale College, *Residential Life*, https://www.hillsdale.edu/campus-life/residential-life/; Hillsdale College, *Regulations for Proper Student Conduct*, https://www.hillsdale.edu/wp-content/uploads/2017/03/Deans-Office-Regulations-For-Student-Conduct-Mar-2017.pdf
[6] Hillsdale College, *About*, https://www.hillsdale.edu/about/.
[7] Eckholm, *supra* n.3.

23.     Students at Hillsdale have long spoken up about sexual assault on campus and advocated for a stronger and more concrete sexual misconduct policy.

24.     A 2018 article in The Collegian, the campus newspaper, noted that the process of investigating reports of sexual assault is "not well known to students, and its case-by-case approach leaves room for speculation."[8] The article called for mandatory sexual assault education and improvements to the policy.

25.     Despite the fact that that Hillsdale lacks policies to prevent sexual assault and has a long history of mismanaging student reports of assault, Hillsdale continues to misrepresent itself as a safe place where students can thrive.

26.     On the front page of its website, and on the page for undergraduate admissions, Hillsdale holds itself out as a place where its students "*grow in heart and mind* by studying timeless truths *in a supportive community dedicated to the highest things*."[9]

---

[8] Kaylee Mcghee, *Let's Talk About Sexual Assault On Campus*, The Collegian (Oct. 4, 2018), https://hillsdalecollegian.com/2018/10/lets-talk-sexual-assault-campus/.
[9] Hillsdale College, *Home Page,* https://www.hillsdale.edu/.



Figure 1: Hillsdale Landing Page

7.      On its webpage for Student Support, the school touts the "wide range of services designed to promote a *safe, healthy campus environment*."[10]

---

[10] Hillsdale College, *Student Support,* https://www.hillsdale.edu/campus-life/student-support/.



Figure 2: Hillsdale Student Support Page

8.     Hillsdale's undergraduate admissions webpage links to the school's Honor Code, which every Hillsdale student must sign as an incoming freshman. The Honor Code, requires, among other things, that the students are "respectful of the rights of others."[11]

---

[11] Hillsdale College, *Honor Code,* https://www.hillsdale.edu/campus-life/honor-code/.



In keeping with the original and abiding mission of Hillsdale College, each entering freshman signs the following document, committing himself or herself to participate fully and honorably in that mission.

*A Hillsdale College student is honorable in conduct, honest in word and deed, dutiful in study and service, and respectful of the rights of others. Through education the student rises to self-government.*

Figure 3: Hillsdale Honor Code

9.      Plaintiff Chen decided to go to Hillsdale after researching the school because she thought it would be a quiet, safe place to attend college.

10.      Plaintiff Villarreal decided to go to Hillsdale after researching the school because she liked the emphasis on politics and thought it would be a safe place to go to college.

**C.      <u>Hillsdale fails to have or enforce policies that prevent sexual assault, or otherwise effectively and transparently handle reports of sexual assault.</u>**

11.      Hillsdale created and maintains an environment that deters students from seeking support from the school after suffering sexual assault.

12.      Hillsdale's policy for addressing sexual misconduct is grounded in its notion of moral responsibility.

13.      The policy begins with a "Policy Statement" that states: "'The College has always understood morally responsible sexual acts to be those occurring in marriage and between the sexes. This understanding has been unwavering, undergirds its policies regarding student conduct,

and informs its institutional practices' (Guidelines Regarding the Mission and Moral Commitments of Hillsdale College). In the culture at large, many now do not hold to these understandings or the practices resulting from them. Nevertheless, as partners with the College, all students, faculty, and staff grasp the fact of its commitments and become partners with the College by engaging to cooperate with its principles." [12]

14. Instead of implementing policies and procedures that prevent sexual assault, Hillsdale's sexual assault policy: (1) does not discuss consent; (2) leaves all investigation and enforcement up to the school's discretion; and (3) fails to guarantee confidentiality.

15. Hillsdale further fails, as a matter of practice, to effectively and transparently enforce its investigative procedure.

16. These deficiencies in policy and practice are calculated to discourage student reports of sexual assault.

17. Indeed, because of these deficiencies fewer Hillsdale student-survivors of sexual assault report their assaults to the College. [13]

18. Because of the deficiencies in the College's policies and practices, student-assailants are emboldened to act with impunity.

**1)  <u>Hillsdale's sexual assault policy fails to discuss consent.</u>**

19. Although the policy discusses sexual assault, sexual misconduct, and sexual harassment, it does not discuss consent; instead, students must navigate to a separate page containing a short paragraph on consent.

---

[12] Hillsdale College, *Procedures for Addressing Sexual Misconduct*, https://www.hillsdale.edu/smp/.

[13] *See* U.S. Department of Education, *Educator Sexual Misconduct: A Synthesis of Existing Literature* (2004) (noting that the lack of robust reporting systems contributes to the continuation of sexual misconduct on school campuses).

20.     This suggests that consent is irrelevant or, at best, tangentially related to a discussion of sexual assault.

**2)  Hillsdale's sexual assault policy provides the College with total discretion and fails to provide any transparency to students.**

21.     The Defendant's sexual assault policy leaves all investigation and enforcement to the school's discretion, including who will investigate a report of assault.

22.     According to the policy, Hillsdale "*may* refer such investigation to a neutral, third-party investigator, when circumstances warrant, as determined by the College."[14] This means that a reporting student has no way to know in advance who will investigate their report or by what procedures.

23.     The school's discretion also extends to the standard of proof applied to any investigation of a report of sexual assault.

24.     The policy states that Hillsdale will never punish "without evidence amounting to proof," but it does not articulate what standard of proof the school applies or how Hillsdale evaluates the evidence.[15]

25.     The school's discretion also extends to the punishment given to students who violate the policy.

26.     According to the policy, "the Deans *may* impose *any* of the disciplinary measures outlined in the Procedure for Student Discipline. The Deans *may take any other actions deemed necessary* to eliminate the conduct, prevent its recurrence, and remedy its effects, while also protecting the Hillsdale College community." [16]

---

[14] Hillsdale College, *Hillsdale College Procedures for Addressing Sexual Misconduct*, https://www.hillsdale.edu/smp/ (emphasis added).
[15] *Id.*
[16] *Id.* (emphasis added).

27.     This vague language vests the Deans with broad authority to investigate and punish—or not—as they see fit without reference to public, transparent, and objective criteria.

28.     A student reporting sexual assault has no clarity up front about what action the school will take.

### 3) Hillsdale's sexual assault policy does not ensure confidentiality to reporting students.

29.     Defendant's sexual assault policy does not guarantee confidentiality to a student reporting an assault to the school.

30.     The policy states that Hillsdale will honor requests for anonymity or not to investigate "only when it is *reasonable to do so under the circumstances*. The College reserves the right to investigate, even if the complaining person does not request an investigation or seeks to remain confidential, where doing so is necessary to ensure the health and safety of the College community."[17]

31.     Under the policy, a student is guaranteed confidentiality only if they report to counsellors at the wellness center or local hospital.

32.     As a result of the policy, students forfeit their confidentiality when they report to Hillsdale, before the school gives them any information about who would investigate their report and what potential action the school could take.

33.     Given the lack of guaranteed confidentiality for student-reporters, fewer student-survivors report sexual assault at Hillsdale.

34.     Student-survivors brave enough to forego confidentiality risk backlash and retaliation from their friends, their community, their teachers, and the administrators tasked with stewarding their educational experience in Hillsdale's small and tight-knit community.

---

[17] *Id.* (emphasis added).

35.     Hillsdale's policies call for investigations of sexual assault claims, but in practice, these "investigations" are a charade at best; the school does not thoroughly investigate the facts or witnesses, let alone conduct an impartial, transparent investigation.

36.     The policy itself does not explain what an investigation requires; a student considering reporting must look through the lengthy "Frequently Asked Questions" page to see what an investigation entails.[18]

37.     According to the FAQs, the assigned investigator begins "by taking a full statement" from the reporting student. The Dean's office then "assess[es] whether any preventative measures need to be taken . . . such as a no-contact order, housing or class schedule modifications, or suspension pending investigation."[19] "Even if a formal no-contact order is not issued, in most cases, the Deans will advise both the complaining and the accused student to refrain from talking to or having any involvement with one another, outside of unavoidable classroom meetings."[20] Then, the "appropriate [sic] will meet with the accused person and inform the person of the complaint, the investigation, and available resources, as well as any preventative measures."[21] The investigator then will "interview any witnesses to the event," gather "any physical evidence such as documents, text or email evidence, social media evidence, photos or videos, and any other information that can assist in determining what happened," and interview the accused.[22] The "Deans' office will maintain regular contact with the involved students to ensure that the supportive services in place are assisting the student, to determine whether other assistance is

---

[18] Hillsdale College, *Frequently Asked Questions*, https://www.hillsdale.edu/smp/faq/.
[19] *Id*.
[20] *Id*.
[21] *Id*.
[22] *Id*.

required and to provide updates on the status of the investigation."[23] The reporting student and the accused are informed of the investigation results on the same day.[24]

38.     Hillsdale does not conduct an impartial, transparent investigation; Hillsdale does not even investigate student reports of assault as its policy and FAQs require.

39.     Per Hillsdale's policy, the assigned investigator is supposed to assess whether preventative measures are required during their first meeting with the reporting student. The investigator does not assess reporting students for preventative measures. Hillsdale does not implement no-contact orders even when the investigator indicates that one is in place to the reporting student, or when the reporting student asks for one.

40.     The FAQs say that the investigator will "interview any witnesses to the event,"[25] but the investigators do not interview all of the witnesses identified by reporting students.

41.     The FAQs say that the Deans' office will maintain "regular contact" with the reporting student to monitor supportive services and provide updates on the investigation,[26] but reporting students go weeks without updates on the status of their investigations.

42.     The policy and FAQs say that Hillsdale will "implement necessary interim measures, whether supportive (services, accommodations, and other assistance to the complaining student) or protective (addressed toward the accused, such as no-contact directives, housing or schedule modifications, placing a hold on transcripts or degrees, or suspension)."[27]

43.     Despite its policy, Hillsdale does not implement necessary supportive or protective services, including no-contact orders or schedule modifications.

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*

44.     The policy requires Hillsdale to "summarize its findings and determinations to each party."[28]

45.     Despite its policy, Hillsdale does not explain its investigation findings or its punishments to the reporting student in writing.

46.     The policy "prohibits retaliation against any person who, in good faith, reports sexual misconduct, participates in an investigation or sanction for sexual misconduct, or otherwise assists in combatting sexual misconduct on the Hillsdale College campus."[29]

47.     Despite its policy, Hillsdale retaliates against students who seek transparency and details about their investigation, including by threatening them and their parents and blaming them for their sexual assault.

### D.     Plaintiff Chen's Rape

48.     On or around November 22, 2021, a few months into her freshman year at Hillsdale, Plaintiff Chen was raped by a fellow Hillsdale track athlete in a dormitory on campus. Despite Plaintiff Chen's repeated attempts to fend him off, the assailant took off her pants and penetrated her with his fingers. He forced Plaintiff Chen to masturbate his penis and then tried to penetrate Plaintiff Chen with his penis. Plaintiff Chen refused to have sex with the assailant and was terrified throughout the rape. The rape ended only after Plaintiff Chen repeatedly pleaded for the assailant to stop. Plaintiff Chen's assailant later apologized to her for his actions.

49.     Plaintiff Chen was traumatized by the rape. She initially struggled to understand what had happened to her, and after hearing another student athlete on the track team speak about her experience of trying to report sexual assault, Plaintiff Chen realized that she had been raped.

---

[28] *Id*.
[29] *Id*.

**Chen Reports Her Rape to Hillsdale**

50.     On or around **February 7, 2022**, Plaintiff Chen met with Lindsay Peirce, a school counsellor at Hillsdale, to help her process the assault and understand what happened.

51.     During the meeting, Peirce confirmed that Plaintiff Chen was sexually assaulted but advised that the school's Deans would take no action on a report of sexual assault without concrete evidence.

52.     Plaintiff Chen felt discouraged by Pierce's comments, but she decided to report the incident to the Deans because she heard that her rapist might be going after other female students and she did not want someone else to go through what she had been through.

53.     On or around **March 3, 2022**, Plaintiff Chen met with Dean of Women Rebekah Dell and Associate Dean of Women Stephanie Gravel to discuss her sexual assault.

54.     At that meeting, Plaintiff Chen presented the Deans with a written report detailing her assault.

55.     In the meeting, Dean Dell indicated that she believed Plaintiff Chen and would review Plaintiff Chen's report first to make sure that there was nothing in it that her assailant could use against her in a counter-suit, which Plaintiff Chen understood to mean a defamation action.

56.     Dean Dell arranged for Plaintiff Chen to meet with Kimberley Graham, an outside lawyer the school was using to investigate the assault.

**Hillsdale Investigates and Chen's Rapist Confirms Her Allegations
But No Remedial Action is Taken**

57.     On or around **March 24, 2022**, in her first meeting with Plaintiff Chen, Graham informed Plaintiff Chen that her assailant did not deny her account.

58.     Graham further indicated that the investigation was about guiding the Deans through what disciplinary steps should be taken because Plaintiff Chen's assailant did not refute her allegations.

59.     Graham, however, made inappropriate statements to downplay the severity of the assault, and told Plaintiff Chen that she was fortunate that her assailant did not rape her.

60.     Graham also refused to interview witnesses that Plaintiff Chen identified in her written report, in violation of Hillsdale's "sexual misconduct policy," purportedly because there were no discrepancies between Plaintiff Chen's story and her assailant's.

61.     On or around **April 5, 2022**, Plaintiff Chen met with Graham again.

62.     Despite her earlier statements, Graham claimed that Plaintiff Chen was not sexually assaulted because there was no obvious force.

63.     Graham indicated that Plaintiff Chen's assailant would not be punished because he was already doing community service, AA meetings, and counselling for a prior drinking infraction.

64.     Graham suggested that Plaintiff Chen take time off during the summer break and put the sexual assault behind her so she could be friends with her assailant in the future.

65.     Graham also suggested that Plaintiff Chen's assailant would not be able to contact her, but referred her to the Deans for details.

66.     Although Plaintiff Chen followed up with Dean of Men Aaron Peterson about a no-contact order, and specifically raised scenarios in which she would see her rapist, Hillsdale never implemented a no-contact order.

67.     Because of Hillsdale's failure to implement a no-contact order, Plaintiff Chen continued to have to see her rapist at track events, in class, and while he was serving food at the only dining hall on campus as part of his community service.

68.     On or around **April 8, 2022**, Dr. Amy Chen, Plaintiff Chen's mother, emailed the Deans requesting a meeting about the investigation.

69.     Receiving no response, on or around **April 9, 2022**, Plaintiff Chen emailed Dean Dell reiterating her request for a written investigation report.

70.     In response, the Deans referred Plaintiff Chen and her mother to Bob Norton, Hillsdale's legal counsel.

71.     However, Norton refused to provide a written investigation report or communicate by email with Dr. Chen; instead he called Dr. Chen and, in a hostile tone, suggested that if she had read Plaintiff Chen's report, she would know that Plaintiff Chen's account of the incident was not accurate.

72.     On or around **April 13, 2022**, Dr. Chen followed up with Deans Dell, Gravel, and Petersen, reiterating her request for a written investigation report.

73.     On or around **April 15, 2022**, Dean Dell replied to Dr. Chen stating that due to the "adversarial tone" of her April 8, 2022 email, Norton would be her point of contact with Hillsdale.

74.     On or around **April 15, 2022**, after Hillsdale backtracked and told Plaintiff Chen she was not assaulted, she sought further guidance from Brock Lutz, Hillsdale's Director of Health and Wellness, who confirmed that her assailant attempted rape.

75.     Lutz further informed Chen that Dean Dell had told him that there were discrepancies between Plaintiff Chen and her rapist's story about consent; this was the first time Plaintiff Chen heard about purported discrepancies in her story.

76.     Dean Dell shared Plaintiff Chen's written report with Lutz and Norton without asking Plaintiff Chen's permission.

77.     Plaintiff Chen and her mother continued to press Hillsdale for a written investigation report explaining Hillsdale's findings.

78. On or around **April 20, 2022**, Dean Dell emailed that Plaintiff Chen could meet with Graham and Norton or consider her case concluded.  At this point, Plaintiff Chen declined to meet alone with the school's counsel, and ceased communication with the school about her case.

79. Plaintiff Chen continues to see her rapist at school and track events, at least three times per week. During the fall 2022 semester, Plaintiff Chen was in a class with him and eight other students. Seeing him gives Plaintiff Chen panic attacks, makes her physically uncomfortable, hyperaware of her surroundings, and very anxious. The emotional toll of the assault and investigation have negatively impacted Plaintiff Chen's wellbeing—she was diagnosed with generalized anxiety disorder and post-traumatic stress disorder ("PTSD") in July 2023—as well as her academic and athletic performance.

### E.    Plaintiff Villarreal's Rape

80. On or around August 29, 2021, shortly after returning to Hillsdale for her sophomore year, Plaintiff Villarreal was raped by a fellow student and a member of Hillsdale's baseball team at his apartment which is a five-minute drive away from campus. The assailant propositioned Plaintiff Villarreal for sex, and after she declined, she was frightened by the sudden change in his demeanor. Plaintiff Villarreal was paralyzed with fear and the assailant proceeded to penetrate her with his penis. The rape concluded only after Plaintiff Villarreal told her assailant to stop.

### Villarreal Reports Her Rape to Hillsdale

81. After reeling from the assault, Plaintiff Villarreal reported the rape a day or two later to the local police.

82. Within days of filing a police report, Plaintiff Villarreal then emailed Dean of Men Aaron Peterson that she had been sexually assaulted. Peterson responded, in turn, and instructed her to meet with Mechelle Zarou, an outside lawyer who would investigate the rape.

## Hillsdale Investigates and Confirms Villarreal's Allegations
## But No Remedial Action is Enforced

83.     Plaintiff Villarreal first met with Zarou the day after she reported her assault to Hillsdale.

84.     Hillsdale did not tell Plaintiff Villarreal that she could meet with her lawyer before meeting with Zarou.

85.     At the meeting, Plaintiff Villarreal recounted her assault to Zarou as she nodded and signaled that she understood. Zarou then told Plaintiff Villarreal that she was in town to give a presentation on campus about issues including sexual assault, and that Plaintiff Villarreal's story was so similar to a hypothetical she had written that she would now have to change the presentation. When the meeting concluded, Zarou told Plaintiff Villarreal that she would next meet with the assailant, and then follow up with Plaintiff Villarreal again.

86.     Zarou did not interview Villarreal's rapist until months after meeting with Villarreal. Villarreal's rapist had not initially been responsive to Zarou's messages because he had been meeting with several lawyers.

87.     Plaintiff Villarreal met with Zarou a second time months later.

88.     This time, Zarou said the meeting was to go through discrepancies between Plaintiff Villarreal's story and her rapist's account.

89.     Zarou asked Plaintiff Villarreal questions about the assault that suggested that she was to blame, such as Villarreal's initiation of romantic contact earlier in the evening.

90.     In the course of their conversations, Zarou indicated to Plaintiff Villarreal that the rapist maintained that he never asked Plaintiff Villarreal if she wanted to have sex, he just penetrated her. Plaintiff Villarreal emphasized that she told him she did not want to have sex with him after he asked for consent.

91.     On or around **October 15, 2021**, Plaintiff Villarreal and her stepfather met with Zarou for a third time.

92.     In this meeting, in which Zarou was at times hostile, she delivered her "findings."

93.     Zarou initially told Plaintiff Villarreal and her stepfather that her rapist violated the sexual misconduct policy because he tried to have sex with her after she revoked consent and because he stopped as soon as Plaintiff Villarreal withdrew consent, his punishment would not be expulsion. Plaintiff Villarreal corrected Zarou that she never gave consent to begin with, Zarou then agreed and reiterated that Plaintiff Villarreal's rapist acted without consent but because he stopped penetrating her when she told him to, he would not be expelled.

94.     On or around **October 26, 2021**, Zarou informed Plaintiff Villarreal that Hillsdale placed Plaintiff Villarreal's rapist on social probation, required him to do community service, and suspended him indefinitely from baseball.

95.     This punishment was not enforced.

96.     On one occasion, Plaintiff Villarreal saw her rapist at a party.

97.     On another occasion, she saw him walking on campus with his baseball shoes, suggesting he continued to play on the baseball team.

98.     When Plaintiff Villarreal asked the baseball coaches if he was allowed to practice, they did not answer the question. Plaintiff Villarreal inquired about his punishment to the Dean of Women and was told that she was not privy to other students' disciplinary actions, even though Zarou had already told Plaintiff Villarreal the punishment Hillsdale gave him.

99.     Plaintiff Villarreal's rapist was allowed back onto the baseball team for the second semester, just in time for the season to start.

100.     Hillsdale's general counsel, Bob Norton, threatened Plaintiff Villarreal's parents that if she continued to inquire about the investigation and punishment, there would be consequences for her.

101.     Norton further suggested that Plaintiff Villarreal reported her rape only after she came to regret a consensual sexual encounter. Immediately upon leaving the meeting with Norton, Villarreal's parents felt that Villarreal should transfer schools to protect her safety and well-being.

102.     Plaintiff Villarreal was forced to see her rapist around once a day in passing. Plaintiff Villarreal stopped going to parties after she saw him at one. The rape and investigation took a big toll on Plaintiff Villarreal. At first, schoolwork was a welcome distraction from the investigation but then Plaintiff Villarreal began to suffer from depression and stopped caring about schoolwork. She withdrew from her social life and her friendships suffered. She felt numb and had trouble sleeping at night. After Plaintiff Villarreal left Hillsdale, she started seeing a therapist and was prescribed antidepressants.

## VI.     **CLASS ALLEGATIONS**

103.     Pursuant to the provisions of Rules 23(a), (b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and a proposed class ("Class") of others who are similarly situated:

> All female students who are or were enrolled at Hillsdale College from October 25, 2017 onwards and who were sexually assaulted or treated in a manner covered by the sexual assault policy.

104.     Excluded from the Class are (1) the Defendants in this action (and their officers, directors, agents, employees, and members of their immediate families), and any entity in which the defendants have a controlling interest, and the legal representatives, heirs, successors and assigns of defendants, and (2) the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

105.     Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded, reduced, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

106.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims. This action may also, in the Court's discretion, be maintained as a class action with respect to particular common issues.

107.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23 and satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of its provisions.

### A.     <u>Numerosity: FRCP 23(a)(1)</u>

108.     Hillsdale College has approximately 1,573 enrolled undergraduates. Therefore, the Class consists of thousands of individuals, making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the identities of individual members will be ascertainable through records maintained by Defendant. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

### B.     <u>Commonality and Predominance: FRCP 23(a)(2), 23(b)(3), and 23(c)(4)</u>

109.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.     Whether Hillsdale had a duty of care and safety towards its students, including protecting them from, and properly responding to, reports of sexual assault;

b.      Whether Hillsdale breached that duty of care and safety towards its students by failing to have and/or enforce proper policies and procedures for the prevention of, and proper response to, sexual assault;

c.      Whether Hillsdale had a duty to implement and enforce comprehensive rules, regulations, policies, and procedures regarding the response to reports of sexual assault by staff and administrators;

d.      Whether Hillsdale's negligent supervision of staff, administrators, and outside lawyers' response to reports of sexual assault constituted a breach of its duty to care for its students;

e.      Whether Hillsdale created a hostile educational environment by failing to have and implement policies to prevent sexual abuse;

f.      Whether Hillsdale misrepresented the qualities of a Hillsdale education;

g.      Whether Hillsdale's failure to reveal its lack of policies to prevent sexual assault was a material fact; and

h.      Whether Hillsdale's failure to reveal its history of mismanaging student reports of sexual assault was a material fact.

C.      **Typicality: FRCP 23(a)(3)**

110.    Plaintiff Chen's claims are typical of the claims of the Class members whom she seek to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiff Chen and each Class member are subject to ongoing harm from Hillsdale's failure to implement and/or enforce proper policies and procedures to prevent and respond to sexual assault. Plaintiff Chen's claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members, and Plaintiff Chen's claims are based upon the same legal theories as the claims of the other Class members.

### D.      Adequacy: FRCP 23(a)(4)

111.     Plaintiff Chen will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiff Chen's interests do not conflict with the interests of the Class members. Plaintiff Chen has retained counsel competent and experienced in complex class action litigation, including class actions arising from claims of sexual assault and abuse. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor her counsel has interests that conflict with the interests of the other Class members. Therefore, the interests of the Class members will be fairly and adequately protected.

### E.      Declaratory and Injunctive Relief: FRCP 23(b)(2)

112.     Hillsdale has acted or refused to act on grounds generally applicable to Plaintiff Chen and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

### F.      Superiority: FRCP 23(b)(3)

113.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The injuries suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Hillsdale such that it would be impracticable for members of the Class to individually seek redress for Hillsdale's wrongful conduct. The likelihood of individual members of the Class to prosecute separate claims on the violations alleged is particularly remote in this instance, in light of the heightened vulnerability of the prospective Class members and the type of abuses alleged.

114.     Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## NEGLIGENCE
### (On behalf of both Plaintiffs and the Class)

115.    Plaintiffs incorporate by reference each allegation set forth in the preceding

paragraphs.

116.    Hillsdale had a duty of care towards Plaintiffs. Specifically, as Hillsdale students,

Hillsdale had a duty to provide Plaintiffs with a safe educational environment. Plaintiffs were

underclassmen who lived their lives on campus: sleeping in in campus dorms, eating in campus

dining halls, attending class in campus classrooms, and studying in campus study spaces. Hillsdale

therefore exercised a measure of control over Plaintiffs' lives and that of other students.

117.    Hillsdale breached that duty of care by exposing Plaintiffs to a risk of sexual assault.

118.    Hillsdale exposed Plaintiffs to a risk of sexual assault by failing to have policies

that prevent sexual assault. Hillsdale's policy does not mention consent; inconsistently and

inaccurately defines sexual misconduct and sexual assault; fails to clearly set out who will

investigate reports of assault; fails to clearly set out punishments for violating the "sexual

misconduct policy;" and fails to guarantee student reporters anonymity, privacy, or confidentiality.

Hillsdale students also are not made aware of the policy or its application to them.

119.    Hillsdale exposed Plaintiffs to a risk of sexual assault by failing to even implement

its "sexual misconduct policy." Hillsdale did not properly investigate Plaintiff Chen's report of

abuse because it did not interview witnesses she identified. Hillsdale did not provide updates to

Plaintiffs on the status of their investigations. Hillsdale did not implement necessary interim

measures, including a no-contact order for Plaintiff Chen. Hillsdale did not explain its investigation

findings. By mismanaging their investigations, and those of generations of students before then,

Hillsdale exposed Plaintiffs to a risk of sexual assault because Hillsdale students knew that their

school would not take reports of sexual assault seriously and perpetrators could assault their fellow students with impunity.

120.    Hillsdale's conduct caused Plaintiffs to suffer physical pain in the form of sexual assault and rape.

121.    Hillsdale's conduct caused Plaintiffs to suffer emotional damages in the form of anxiety, PTSD, and depression.

122.    Hillsdale's conduct caused Plaintiffs to suffer physical pain and suffering in the following ways:

a.    Hillsdale, by commission and omission, allowed and tolerated sexual assault;

b.    Hillsdale, by commission and omission, failed to train and hire school administrators and outside investigators to respond properly to reports of sexual assault;

c.    Hillsdale failed to warn Plaintiffs of the risk of harm to which they were subjected while attending Hillsdale;

d.    Hillsdale failed to properly investigate Plaintiffs' reports of assault and rape;

e.    Hillsdale failed to take the necessary steps to protect Plaintiffs from having further contact with their assailants;

f.    Hillsdale failed to explain their investigation findings to Plaintiffs;

g.    Hillsdale threatened Plaintiff Villarreal if she continued to seek clarity about the investigation and punishment;

h.    Hillsdale suggested that Plaintiff Villarreal reported her rape because she came to regret consensual sex with her assailant.

123.    Hillsdale owed Plaintiffs a duty of care, it breached that care, its breach caused Plaintiffs to be assaulted, and Plaintiffs suffered damages as a result of the breach.

### Allegations Specific to Injunctive Relief

124.    By failing to implement and enforce necessary and appropriate policies, procedures, and protocols to prevent and properly respond to student reports of sexual abuse, Hillsdale has breached its duty towards Plaintiff Chen and the Class.

125.    Hillsdale's failure to address the substantial risk posed by the lack of policies and their enforcement was clearly unreasonable in light of numerous student reports of sexual assault and student efforts to strengthen the "sexual misconduct policy."

126.    Hillsdale's failure to set and enforce appropriate policies, in light of numerous student reports of sexual assault and student efforts to strengthen the "sexual misconduct policy," creates a real, immediate, and direct threat of irreparable harm to Plaintiff Chen and the Class.

127.    Plaintiff, like all Class members, faces a real, immediate, and direct threat of sexual assault, sexual harassment, and emotional trauma because of Hillsdale's failure to have or enforce appropriate policies and procedures to prevent, and sufficiently respond to, sexual assault on campus.

128.    The risk of irreparable harm that Plaintiff Chen and the Class face is higher than the general societal risk of these harms, and that increased risk is directly traceable to Hillsdale's actions and inactions.

129.    The harms that Hillsdale puts Plaintiff Chen and the Class at increased risk for are irreparable, because, unlike economic losses, sexual assault, sexual harassment, and emotional trauma cannot be undone or reversed by monetary compensation. Thus, monetary compensation is inadequate to remedy these harms.

130. The common injury that Plaintiff Chen and the Class currently suffer—the increased risk of sexual assault—will be redressed by proactive injunctive relief to eliminate the increased risk and protect Plaintiff Chen and the Class from being so irreparably harmed.

131. Under the common law, Hillsdale is required to fulfil its duty of care toward Plaintiff Chen and the Class by providing them with a safe educational environment.

132. Accordingly, Plaintiff Chen, on behalf of herself and the Class, requests that the Court issue an Order requiring Defendants to implement and enforce best-practice policies and procedures to prevent, and sufficiently respond to, sexual assault on campus.

133. In crafting her specific injunctive relief demands, Plaintiff Chen intends to consult with experts in best-practices to prevent, and sufficiently respond to, sexual violence on campus, but by way of example, such relief might include:

    a.   requiring Hillsdale to establish and implement a uniform policy, including training and education for its employees and staff, for how to identify sexual assault;

    b.   requiring Hillsdale to establish and implement policies and procedures to prevent sexual violence on campus, including student education and messaging, and clear communication of consequences;

    c.   requiring Hillsdale to establish and implement a uniform policy, including training and education for its employees, professors, and staff, for how to respond to student sexual assault that includes humane and trauma-informed treatment of the alleged victim(s);

    d.   requiring Hillsdale to track all reports of sexual assault;

    e.   requiring Hillsdale to establish a uniform policy, including training and education for its staff, for how to report sexual assault to the proper authorities, and making reporting of student sexual assault to authorities mandatory;

    f.   appointing an Independent Monitor to supervise and enforce the implementation of the injunctive relief reforms, and report regularly on that progress to the parties and the Court;

    g.   requiring Hillsdale to create a Coordinated Community Response Team ("CCRT") at Hillsdale to assess Hillsdale's culture and existing policies, identify elements that need to be changed, and lead the implementation of

those changes to create an effective comprehensive prevention system and oversee and adjust the system on an ongoing basis according to best practice as defined by the United States Department of Justice Office on Violence against Women and other well-regarded sources;

h.    requiring Defendants to implement a disclosure, reporting, and response systems to be created by the CCRT. The primary goals of the disclosure, reporting, and response system will include: (1) simplification to make it clearer and less confusing for victims to know—or find out—how to disclose or report, and to ensure they have to recount the harassing events as few times as possible (ideally only once)—to someone who will respond appropriately and according to whether the victim disclosed or reported, so the victim can easily access needed services; (2) maximization of options for victims to disclose or report; (3) procedural equality for victims once they have reported and an investigation is occurring or is imminent;

i.    requiring Hillsdale, with input from the CCRT, to inventory the range of victim services and advocacy currently available at Hillsdale to consolidate those services where advisable and/or otherwise to establish a full-time victim services and advocacy office at Hillsdale, which will allow survivors one-stop access to a range of services, including medical, counseling, academic, housing, employment, financial aid, law enforcement, and student conduct processes, all through a single office; and

j.    requiring Defendants to create and implement a unified response system for handling, investigation, and record-keeping of all reports of sexual misconduct on campus.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (On behalf of both Plaintiffs and the Class)

134.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

135.    Hillsdale intended to inflict emotional distress or it knew or should have known that emotional distress was the likely result of failing to have or enforce policies that prevent sexual assault and mismanaging student reports of sexual assault.

136.    Hillsdale's conduct was so extreme and outrageous that it went beyond the bounds of decency and was atrocious and utterly intolerable.

137.    Hillsdale's conduct was intentional or reckless. Hillsdale acted with indifference as to whether its conduct would harm Plaintiffs. Hillsdale acted with intentional disregard of the known and substantial risk that its negligence would reasonably result in harm to Plaintiffs.

138.    Hillsdale's conduct was the cause of Plaintiffs' severe emotional distress.

139.    Hillsdale's conduct was the cause of Plaintiffs' damages.

### Allegations Specific to Injunctive Relief

140.    Hillsdale's conduct continues to expose Plaintiff Chen and the Class to the real, immediate, and direct threat of irreparable harm in the form of sexual assault, which will continue to cause pain and suffering and loss of enjoyment of life.

141.    The harms that Hillsdale puts Plaintiff Chen and the Class at increased risk for are irreparable, because, unlike economic losses, sexual assault, sexual harassment, and emotional trauma cannot be undone or reversed by monetary compensation.

142.    Because the risk of sexual assault is heightened and ongoing, and that increased risk is directly traceable to Hillsdale's actions and inactions, Plaintiff Chen requests the Court order injunctive relief as described above.

### COUNT III
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
#### (On behalf of both Plaintiffs and the Class)

143.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

144.    Hillsdale's negligent acts and omissions constitute the negligent infliction of emotional distress.

145.    Hillsdale acted negligently towards Plaintiffs, as described above.

146.    This negligent conduct created an unreasonable risk of physical harm in the form of sexual assault. This unreasonable risk caused Plaintiffs to fear for their physical safety.

147.     Hillsdale's negligence placed Plaintiffs in the zone of danger of physical injury and resulted in Plaintiffs suffering actual injury.

148.     Plaintiffs suffered and continue to suffer predictable, probable, and anticipated emotional distress as a result of Hillsdale's negligent conduct.

149.     Hillsdale's conduct was the cause of these damages.

150.     Hillsdale's failure to have and enforce policies to prevent and respond to sexual assault exacerbates the trauma of the actual assault due to institutional betrayal.

<strong>Allegations Specific to Injunctive Relief</strong>

151.     Hillsdale's negligent conduct places Plaintiff Chen and the Class in the zone of danger of physical injury by exposing them to the real, immediate, and direct threat of irreparable harm in the form of sexual assault.

152.     The harms that Hillsdale puts Plaintiff Chen and the Class at increased risk for are irreparable, because, unlike economic losses, sexual assault, sexual harassment, and emotional trauma cannot be undone or reversed by monetary compensation.

153.     Because the risk of sexual assault is heightened and ongoing, and that increased risk is directly traceable to Hillsdale's actions and inactions, Plaintiff Chen requests the Court order injunctive relief as described above.

<strong><u>COUNT IV</u></strong><br/><strong>VIOLATIONS OF ELLIOT LARSEN CIVIL RIGHTS ACT MCLA 37.2101 <em>et seq.</em></strong><br/><strong>(On behalf of both Plaintiffs and the Class)</strong>

154.     Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

155.     Hillsdale denied Plaintiffs the full utilization of or benefit from their Hillsdale education by creating a hostile educational environment.

156.     Plaintiffs were sexually assaulted and raped while Hillsdale students. They were subject to unwelcome sexual conduct on the basis of sex.

157.    Plaintiffs were subjected to a sexually hostile educational environment. The educational environment was so tainted that it had the purpose or effect of substantially interfering with their education or creating an intimidating, hostile or offensive educational environment.

158.    Hillsdale had actual notice and/or constructive knowledge of the sexually hostile educational environment based on prior student reports of sexual harassment and assault.

159.    Hillsdale was legally responsible for the sexually hostile educational environment.

160.    Plaintiffs opposed the hostile educational environment created by Hillsdale when they reported their assault and rape respectively.

161.    Through Plaintiffs' reporting, Hillsdale was aware of their assault and rape, but failed to take prompt and appropriate remedial action.

162.    Plaintiff Chen first reported her assault to Hillsdale in early February 2022. At that time, Hillsdale staff confirmed that Plaintiff Chen had been assaulted and Plaintiff Chen's assailant did not refute her account of the attack. Nevertheless, Hillsdale has never taken any steps to discipline Plaintiff Chen's assailant or protect Plaintiff Chen. She continues to see her assailant on campus and at social events, which he attends without limitation.

163.    Similarly, Plaintiff Villarreal reported to Hillsdale within days of the rape. Despite Hillsdale staff confirming that the fact pattern constituted sexual assault, Hillsdale did not interview Plaintiff Villarreal's rapist for months. Once Hillsdale placed Plaintiff Villarreal's rapist on social probation, Hillsdale failed to enforce the punishment and adequately protect Plaintiff Villarreal. She continued to see her assailant on campus and at social events, and he was allowed to participate in social events and compete on the baseball team without consequence.

164.    Defendants' actions have deprived Plaintiffs of the full and equal enjoyment of Hillsdale's educational services and facilities. As a direct result of Defendant's actions, Plaintiffs have suffered damages.

**Allegations Specific to Injunctive Relief**

165.    Hillsdale has created a hostile educational environment that continues to exist on campus today. In this hostile educational environment, Plaintiff Chen and the Class are at a real, immediate, and direct threat of irreparable harm in the form of sexual assault, which would substantially interfere with their education.

166.    The harms that Hillsdale puts Plaintiff Chen and the Class at increased risk for are irreparable, because, unlike economic losses, sexual assault, sexual harassment, and emotional trauma cannot be undone or reversed by monetary compensation.

167.    Because the risk of sexual assault is heightened and ongoing, and that increased risk is directly traceable to Hillsdale's actions and inactions, Plaintiff Chen requests the Court order injunctive relief as described above.

**COUNT V**
**VIOLATIONS OF MICHIGAN CONSUMER PROTECTION ACT MCLA 445.901 *et seq.***
**(On behalf of both Plaintiffs and the Class)**

168.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

169.    Before deciding to enroll at Hillsdale, Plaintiffs researched Hillsdale and thought it would be a safe environment in which to attend college.

170.    Hillsdale engaged in trade or commerce by selling educational services primarily for personal, family, or household purposes.

171.    Hillsdale committed "unfair, unconscionable or deceptive methods, acts, or practices" acts by representing that a Hillsdale education would have qualities it did not. Specifically, Hillsdale represented that it would provide students an educational environment in which they would thrive. Hillsdale represented that Plaintiffs would "*grow in heart and mind* by

studying timeless truths *in a supportive community dedicated to the highest things*."[30] Hillsdale represented that it would "*develop the minds and improve the hearts of the students*."" Hillsdale represented that it "*exists for the improvement and ultimate happiness of its students. This great and enduring happiness is its highest purpose.*"[31] Hillsdale represented that it "*not only readies you for the world, we also set a standard for it.*"[32]

172.    Hillsdale committed "unfair, unconscionable or deceptive methods, acts, or practices" by failing to reveal material facts about a Hillsdale education. Hillsdale failed to reveal its failure to have or enforce policies that prevent sexual assault.

173.    The failure to have or enforce policies that prevent sexual assault is a material fact that was important to Plaintiffs' decision to purchase a Hillsdale education that Hillsdale knew or should have known would influence Plaintiffs' decision to purchase.

174.    Hillsdale committed "unfair, unconscionable or deceptive methods, acts, or practices" by failing to reveal its history of mishandling student reports of sexual abuse.

175.    The failure to disclose its history of mishandling student reports of sexual abuse is a material fact that was important to Plaintiffs' decision to purchase a Hillsdale education that Hillsdale knew or should have known would influence Plaintiffs' decision to purchase.

176.    Hillsdale's conduct caused Plaintiffs' loss. If Plaintiffs had known the truth about a Hillsdale education, they would not have paid for a Hillsdale education or they would have paid less.

## Allegations Specific to Injunctive Relief

177.    Hillsdale continues to make misrepresentations about the education it sells to unsuspecting prospective students. As a direct result of Hillsdale's actions, such prospective

---

[30] Hillsdale College, *Home Page,* https://www.hillsdale.edu/.
[31] Hillsdale College, *Honor Code,* https://www.hillsdale.edu/campus-life/honor-code/.
[32] Hillsdale College, *Life as a Hillsdalian,* https://www.hillsdale.edu/information-for/current-students/.

students are at risk of a real, immediate, and direct threat of irreparable harm in the form of sexual assault. Unlike economic losses, sexual assault, sexual harassment, and emotional trauma cannot be undone or reversed by monetary compensation.

178.    Because prospective students are at risk of sexual assault if they purchase a Hillsdale education, Plaintiff Chen requests the Court order injunctive relief as described above.

**COUNT VI**
**VIOLATION OF TITLE IX (20 U.S.C. § 1681, *et seq.*) FOR DISCRIMINATION**
**(On behalf of both Plaintiffs and the Class)**

179.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

180.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

181.    Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment—including sexual assault—by school employees, students, and third parties.

182.    Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

183.    DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

184.    Plaintiffs are "persons" under Title IX.

185.    As a four-year, liberal arts college, Hillsdale provides education programs and activities that place it squarely in the purview of Title IX.

186.    Hillsdale does not accept government funding in a misguided and ineffective attempt order to avoid its obligations under Title IX. Nevertheless, Hillsdale enjoys tax-exempt status as a 501(c)(3) registered entity. This tax-exempt status operates as a subsidy, which is a form of federal financial assistance. As a result, Hillsdale receives federal financial assistance for its education programs and is therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.,* and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.* Hillsdale is therefore subject to Title IX's obligations guidelines on sex discrimination and sexual assault, and other government regulation.

187.    Before Plaintiffs were raped and sexually assaulted by their fellow Hillsdale students, Hillsdale had actual knowledge of prior incidents of peer-on-peer sexual assault and harassment on campus.

188.    Based on these prior repeated incidents of sexual assault, and Hillsdale's knowledge of their own failure to have and/or implement proper policies to prevent and/or properly respond to incidents of sexual assault, Defendants had actual knowledge of the substantial, increased, above baseline risk that Plaintiffs would be sexually assaulted at Hillsdale.

189.    With this knowledge, Hillsdale had the authority—and obligation—to address the pervasive risk of peer-on-peer sexual assault, and had the authority to take corrective measures, including by implementing and enforcing best-practice policies and procedures for the prevention of, and proper response to, incidents of peer-on-peer sexual assault.

190.    Hillsdale's failure to address the substantial risk of peer-on-peer sexual assault, given prior student reports of sexual assault, and its failure to set appropriate sex discrimination policy was clearly unreasonable in light of the known circumstances.

191.    By its acts and omissions, Hillsdale has been deliberately indifferent to the substantial risk that Plaintiffs would be sexually assaulted and/or harassed while at Hillsdale.

192.    As a result of Hillsdale's deliberate indifference to this pervasive culture of sexual harassment, Plaintiffs have been subjected to sexual assault by their fellow Hillsdale students, and Plaintiffs and the Class are currently subjected to an ongoing, substantial, increased, above- -baseline risk of sexual assault and harassment at Hillsdale.

193.    The sexual abuse and harassment—and increased risk thereof—suffered by Plaintiffs and the Class has been so severe, pervasive, and objectively offensive that it effectively barred their access to education opportunities and benefits, including a safe educational environment, while at Hillsdale. Plaintiff Villarreal was forced to leave Hillsdale due to the ongoing hostile environment on campus and ongoing retaliation by Hillsdale administrators. Plaintiff Chen was forced to attend track practices and classes with her assailant, which severely impacted her mental wellbeing and forced her to dissociate in order to cope. Assault—and the constant risk and fear of it—physiologically rewires the brain in way that impairs learning, development, communication, and growth.[33]

194.    Hillsdale was on notice of the conduct as described above, but nonetheless failed to carry out its duties to investigate and take corrective action under Title IX. Despite being on actual notice of Plaintiff Chen's assault and Plaintiff Villarreal's rape, Hillsdale failed to take

---

[33] *See, e.g.,* Bessel Van der Kolk, The Body Keeps the Score 21 (Viking, 2014) ("Trauma results in a fundamental reorganization of the way mind and brain manage perceptions. It changes not only how we think and what we think about, but also our very capacity to think."); *id.* 44-45 (trauma deactivates the left hemisphere of the brain, which "has a direct impact on the capacity to organize experience into logical sequences… In technical terms they are experiencing the loss of executive function."); *id.* 46 ("The insidious effects of constantly elevated stress hormones include memory and attention problems…"); *id.* 70 ("attention, concentration, and new learning … are compromised by trauma"); *id.* 325 ("Chronic abuse and neglect in childhood interfere with the proper wiring of sensory-integration systems. In some cases this results in learning disabilities…").

meaningful action to investigate either incident and protect Plaintiffs from hostility and retaliation from Hillsdale administrators regarding their attempts to seek a safe educational environment.

195.    Hillsdale is, and has been, deliberately indifferent to the substantial, increased risk of sexual harassment and assault to which female students at Hillsdale are exposed. After receiving numerous complaints from female students reporting sexual abuse by their peers and being lobbied by students advocating for changes to the sexual misconduct policy, Hillsdale ignored the sexual assault and harassment occurring under its watch and allowed it to continue.

196.    Hillsdale failed to properly investigate and address allegations, reports, and complaints of sexual harassment and assault of students by their peers.

197.    By failing to properly investigate and address allegations, reports, and complaints of sexual harassment and assault of students by their peers, Plaintiffs and the Class were placed at—and currently remain at—a heightened risk of sexual assault and harassment.

198.    As a direct and proximate result of Hillsdale's actions and/or inactions, Plaintiffs and Class members have been damaged.

199.    Hillsdale's creation of and deliberate indifference to a sexually hostile culture increased the risk that Plaintiffs and Class members would be sexually harassed or abused. By failing to set appropriate sex discrimination policies, this risk of sexual abuse and harassment was increased even further.

200.    Because Hillsdale has failed to take corrective measures to curb the pattern and practice of peer-on-peer sexual harassment and assault, instead allowing this conduct to prevail, Plaintiffs and Class members have suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' and Class members' damages were the direct and proximate result of Hillsdale's actions and/or inactions. Indeed, Plaintiff Chen was sexually assaulted by a fellow

Hillsdale student on Hillsdale's campus and Plaintiff Villarreal was raped by fellow Hillsdale student five minutes away from Hillsdale's campus.

201.    In subjecting Plaintiffs and the Class to this wrongful treatment as described, and through its violations of Title IX, Hillsdale has acted willfully and maliciously with the intent to harm Plaintiffs and Class members, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs and Class members are therefore entitled to the recovery of compensatory damages, in an amount to be determined by the court, against Hillsdale, in a sum to be shown according to proof.

202.    Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

### <u>COUNT VII</u>
**VIOLATION OF TITLE IX (20 U.S.C. § 1681, *et seq.*) FOR RETALIATION**
**(On behalf of both Plaintiffs and the Class)**

203.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

204.    Retaliation against an individual for complaining of sex discrimination, including sexual harassment, constitutes prohibited sex discrimination under Title IX.

205.    Hillsdale enjoys tax-exempt status as a 501(c)(3) registered entity. This tax-exempt status operates as a subsidy, which is a form of federal financial assistance. As a result, Hillsdale receives federal financial assistance for its education programs and is therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§  1681 *et seq.,* and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.* Hillsdale is therefore subject to Title IX's obligations guidelines on sex discrimination and sexual assault, and other government regulation.

206.    At the time of the events in question, Plaintiffs were enrolled as undergraduate students at Hillsdale.

207.    Hillsdale had actual knowledge of the sexual misconduct of Plaintiffs' assailants:

a.    Plaintiff Chen reported her rape to Hillsdale counsellor Lindsay Peirce, who confirmed that she was sexually assaulted.

b.    Plaintiff Chen reported her rape to Hillsdale Dean of Women Rebekah Dell and Associate Dean of Women Stephanie Gravel. Dean Dell indicated that she believed Plaintiff Chen and implied that she wanted to protect Plaintiff Chen from a potential counter-action by her assailant.

c.    Plaintiff Chen reported her rape to Hillsdale Director of Health and Wellness Brock Lutz, who confirmed that her assailant attempted rape.

d.    Plaintiff Villarreal reported her rape to Dean of Men Aaron Peterson, who instructed her to meet with an outside lawyer who would investigate the rape.

208.    As set forth above, Hillsdale engaged in multiple types of retaliatory conduct against Plaintiffs for pursuing investigations into their assault:

a.    Hillsdale refused to provide Plaintiffs with anything in writing about the investigations into their reports of assault.

b.    Dean Dell indicated to Plaintiff Chen that she risked facing a counter-suit, possibly for defamation, by her assailant.

c.    Hillsdale counsel Kimberley Graham suggested that Plaintiff Chen take time off during the summer break to put the sexual assault behind her.

d.    Hillsdale counsel Bob Norton called Plaintiff Chen's mother and tried to intimidate her by telling her that Plaintiff Chen was wrong about her assault, and dared her to get a lawyer.

e.    Hillsdale counsel Bob Norton threatened Plaintiff Villarreal if she continued to seek transparency and clarity about the investigation and punishment.

f.      Hillsdale never implemented or enforced any punishment for Plaintiffs' assailants, forcing Plaintiffs to see and interact with their assailants in class, at sporting events, in the dining hall, and at social events.

209.    The examples in this Complaint are part of a pattern by Hillsdale's administration to diminish and dismiss sexual assault by Hillsdale students.

210.    Such retaliation caused Plaintiff Villarreal to leave, and Plaintiff Chen to at times want to leave, Hillsdale, at considerable personal and financial expense.

211.    As a direct and proximate result of Hillsdale's actions and inactions, Plaintiffs were damaged and continue to be damaged.

## PRAYER FOR RELIEF

Named Plaintiffs and Plaintiff Class Members request the following relief from the court:

a.      An Order certifying the class under Federal Rules of Civil Procedure 23(a) and/or (b)(2) as appropriate; appoint Plaintiffs as representatives of the class; and appoint the undersigned counsel as class counsel;

b.      An Order of equitable and/or injunctive relief as explained in Count I and as the Court deems just, proper, and fair;

c.      An Order for an award of compensatory damages, economic and non-economic, past and future;

d.      An Order for an award of punitive damages, past and future;

e.      An Order for reasonable attorney fees and costs.

Dated:        October 25, 2023                Respectfully submitted,


*/s/ Beth M. Rivers*
_____

Beth M. Rivers
Megan A. Bonanni
Channing Robinson-Holmes
**PITT MCGEHEE PALMER BONANNI &
RIVERS PC**
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
Telephone:    248.398.9800
Facsimile:    248.268.7996
brivers@pittlawpc.com
mbonanni@pittlawpc.com
crobinson@pittlawpc.com


*/s/ Annika K. Martin*
_____

Annika K. Martin
Michelle A. Lamy
Caitlin M. Nelson
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:    212.355.9500
Facsimile:    212.355.9592
akmartin@lchb.com
mlamy@lchb.com
cwoods@lchb.com