## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

GRACE CHEN and DANIELLE
VILLARREAL, individually and on behalf of
all others similarly situated,

                Plaintiffs,

v.

HILLSDALE COLLEGE,

                Defendant.

Case No.  1:23-cv-01129-JMB-PJG

District Judge: Jane M. Beckering

Magistrate Judge: Phillip J. Green

## BRIEF IN OPPOSITION TO HILLSDALE'S MOTION TO STRIKE OR DISMISS CLASS ALLEGATIONS FROM AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     BACKGROUND .......................................................................................... 2

III.    LEGAL STANDARD .................................................................................. 4

IV.     ARGUMENT ................................................................................................ 5

    A.    Motions to strike class allegations are disfavored. ............................. 5

    B.    Plaintiffs meet the pleading standard for class allegations. ................ 7

    C.    There is no fatal flaw in plaintiffs' class definition. ........................... 8

    D.    At class certification, Plaintiffs will be able to show the proposed class
          satisfies Rule 23. .............................................................................. 12

        1.    The proposed class satisfies the elements of Rule 23(a) ......................... 12

            a.    Commonality ......................................................... 13

            b.    Typicality ............................................................. 15

        2.    Plaintiffs injunctive relief claim is valid, and the proposed class
              may be maintained under Rule 23(b)(2). ................................. 18

            a.    Plaintiffs' injunctive relief claim is valid .................... 18

            b.    The proposed class may be maintained under Rule
                  23(b)(2). ......................................................... 23

        3.    In the alternative, the proposed class may be maintained under
              Rule 23(c)(4). ..................................................... 24

        4.    Plaintiffs' claims are suitable for class treatment. ................... 26

            a.    Negligence. ......................................................... 26

            b.    Intentional Infliction of Emotional Distress ("IIED"). ............... 27

            c.    Elliott-Larsen Civil Rights Act ("ELCRA") ...................... 27

            d.    Michigan Consumer Protection Act ("MCPA"). .................... 28

            e.    Title IX ............................................................. 28

V.      CONCLUSION ............................................................................................ 29

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A. B. v. Haw. State Dep't of Educ.*,
  30 F.4th 828 (9th Cir. 2022) ...................................................29

*A.M.C. v. Smith*,
  620 F. Supp. 3d 713 (M.D. Tenn. 2022).............................................23, 24

*Abney v. Amgen, Inc.*,
  443 F.3d 540 (6th Cir. 2006) ...................................................18

*Aldrich v. Nat'l Collegiate Athletic Ass'n*,
  565 F. Supp. 3d 1094 (S.D. Ind. 2021) ...................................................23

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ...................................................16

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994).........................................11, 14, 17

*Bearden v. Honeywell Int'l Inc.*,
  720 F. Supp. 2d 932 (M.D. Tenn. 2010) ...................................................5

*Biediger v. Quinnipiac Univ.*,
  No. 09cv621 (SRU), 2010 WL 2017773 (D. Conn. May 20, 2010).......................24

*Brashear v. Perry Cnty., Ky.*,
  No. 06-143-DCR, 2007 WL 1434876 (E.D. Ky. May 14, 2007) ...........................10

*Bridging Cmtys., Inc. v. Top Flite Fin. Inc.*,
  843 F.3d 1119 (6th Cir. 2016) ...................................................6

*Brown v. Cook Cnty.*,
  332 F.R.D. 229 (N.D. Ill. 2019)...................................................15, 16

*Bryant v. Food Lion, Inc.*,
  774 F. Supp. 1484 (D.S.C. 1991)...................................................4

*Carmen v. Health Carousel, LLC*,
  No. 20-cv-313, 2023 WL 5104066 (S.D. Ohio Aug. 9, 2023) ...........................4, 8

**TABLE OF AUTHORITIES**
(continued)

Page

*Caroline C. By & Through Carter v. Johnson*,
174 F.R.D. 452 (D. Neb. 1996)........................................................................15, 17

*Cent. Delta Water Agency v. United States*,
306 F.3d 938 (9th Cir. 2002) ......................................................................19

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).........................................................................19, 22

*Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*,
192 F.R.D. 568 (W.D. Mich. 1999) .........................................................28

*Cole v. City of Memphis*,
839 F.3d 530 (6th Cir. 2016) .......................................................................8

*Coleman v. Gen. Motors Acceptance Corp.*,
220 F.R.D. 64 (M.D. Tenn. 2004) ........................................................10, 23

*Colley v. Procter & Gamble Co.*,
No. 16-cv-918, 2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) .................................6

*Collins v. Greater Cincinnati Behav. Health Servs.*,
No. 23-cv-578, 2024 WL 149292 (S.D. Ohio Jan. 12, 2024)...................................7

*D.T. v. Sumner County Schools*,
942 F.3d 324, 327 (6th Cir. 2019) .........................................................22

*Dix v. Am. Bankers Life Assurance Co. of Fla.*,
415 N.W.2d 206 (Mich. 1987)); .........................................................28

*Doe 1 v. Univ. of San Francisco*,
No. 22-cv-01559-LB (N.D. Cal. Dec. 1, 2023) ......................................20

*Doe v. Baylor Univ.*,
240 F. Supp. 3d 646 (W.D. Tex. 2017)......................................................22

*Doe v. City of Memphis*,
928 F.3d 481 (6th Cir. 2019). ..................................................................14

*Doe v. Univ. of Tenn.*,
186 F. Supp. 3d 788 (M.D. Tenn. 2016)......................................................21, 22

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Dwayne B. by Stempfle v. Granholm*,
No. 06-13548, 2007 WL 9752831 (E.D. Mich. Feb. 15, 2007)............................11, 14, 17, 24

*Faktor v. Lifestyle Lift*,
No. 09-cv-511, 2009 WL 1565954 (N.D. Ohio June 3, 2009) ..................................................6

*In re Fernald Litig.*,
No. C-1-85-149, 1986 WL 81380 (S.D. Ohio Sept. 18, 1986)................................................27

*Galaria v. Nationwide Mut. Ins. Co.*,
663 F. App'x 384 (6th Cir. 2016) .....................................................................................9, 19

*Galoski v. Stanley Black & Decker, Inc.*,
No. 14 CV 553, 2014 WL 4064016 (N.D. Ohio Aug. 14, 2014)..............................................8

*Gasperoni v. Metabolife, Int'l Inc.*,
No. 00-71255, 2000 WL 33365948 (E.D. Mich. Sept. 27, 2000)...........................................28

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)...............................................................................................................4

*Gilkey v. Cent. Clearing Co.*,
202 F.R.D. 515 (E.D. Mich. 2001) .......................................................................................28

*Gooch v. Life Invs. Ins. Co. of Am.*,
672 F.3d 402 (6th Cir. 2012) ................................................................................................23

*Ham v. Swift Transp. Co., Inc.*,
275 F.R.D. 475 (W.D. Tenn. 2011) ......................................................................................26

*Helling v. McKinney*,
509 U.S. 25 (1993)................................................................................................................10

*Hill v. Snyder*,
308 F. Supp. 3d 893 (E.D. Mich. 2018), *aff'd*, 900 F.3d 260 (6th Cir. 2018)........................11

*Jimenez v. Allstate Indem. Co.*,
No. 07-cv-14494, 2010 WL 3623176 (E.D. Mich. Sept. 15, 2010) ...............................4, 7, 12

*Jones v. Lubrizol Advanced Materials, Inc.*,
583 F. Supp. 3d 1045 (N.D. Ohio 2022)................................................................................6

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*,
  927 F.3d 396 (6th Cir. 2019) ....................................................19

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*,
  No. 16-cv-448, 2016 WL 10520133 (S.D. Ohio Dec. 15, 2016)..............................16

*Kinder v. Nw. Bank*,
  278 F.R.D. 176 (W.D. Mich. 2011) ...........................................13

*Kirkbride v. Kroger Co.*,
  No. 21-cv-0022, 2022 WL 2703960 (S.D. Ohio July 12, 2022)..................................8

*Levell v. Monsanto Rsch. Corp.*,
  No. 95cv312, 2005 WL 8161926 (S.D. Ohio Sept. 28, 2005)..................................27

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..........................................................19

*MacDonald v. Thomas M. Cooley L. Sch.*,
  724 F.3d 654 (6th Cir. 2013) ....................................................28

*Manning v. Boston Med. Ctr. Corp.*,
  725 F.3d 34 (1st Cir. 2013)....................................................4

*Marisol A. by Forbes v. Giuliani*,
  929 F. Supp. 662 (S.D.N.Y. 1996), *order aff'd*, 126 F.3d 372 (2d Cir. 1997)........................18

*Martin v. Behr Dayton Thermal Prods. LLC*,
  896 F.3d 405 (6th Cir. 2018) ....................................................25

*Mayer v. Mylod*,
  988 F.2d 635 (6th Cir.1993) ....................................................13

*Mazzola v. Roomster Corp.*,
  849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012)...............................................5

*Mod. Holdings, LLC v. Corning Inc.*,
  No. 13-405-GFVT, 2015 WL 1481459 (E.D. Ky. Mar. 31, 2015)....................................5, 26

*Nixon v. Anthem, Inc.*,
  No. 19-cv-00076-GFVT, 2021 WL 4037824 (E.D. Ky. Sept. 3, 2021) ................................4, 5

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Olean Wholesale Grocery Cooperative., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale
  Grocery Coop., Inc.*, 143 S. Ct. 424 (2022) ............................................................21

*Oom v. Michaels Cos. Inc.*,
  No. 16-cv-257, 2017 WL 3048540 (W.D. Mich. July 19, 2017 ...............................7

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .................................................................................24

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) .............................................................................4, 5

*Progressive Health & Rehab Corp. v. Quinn Med., Inc.*,
  323 F.R.D. 242 (S.D. Ohio 2017) ...............................................................5, 6, 7, 12

*Ramsay v. Frontier, Inc.*,
  No. 19-cv-03544-CMA-NRN, 2021 WL 651021 (D. Colo. Feb. 19, 2021) ...................20, 21

*Rapuano v. Trs. of Dartmouth Coll.*,
  334 F.R.D. 637 (D.N.H. 2020) .............................................................16, 17, 26, 28

*Ries v. McDonald's USA, LLC*,
  No. 20-cv-2, 2021 WL 6133437 (W.D. Mich. Dec. 29, 2021)...............................27

*Rouse v. Caruso*,
  No. 06-CV-10961, 2013 WL 588916 (E.D. Mich. Jan. 7, 2013), *report and
  recommendation adopted*, No. 06-cv-10961, 2013 WL 569638 (E.D. Mich.
  Feb. 13, 2013) ......................................................................................................22

*Rouse v. Washington*,
  No. 20-cv-11409, 2021 WL 2434196 (E.D. Mich. June 15, 2021) ...............................9, 10, 20

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ...............................................................................11

*Sauter v. CVS Pharmacy, Inc.*,
  No. 13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014).......................................4, 5, 12

*Schilling v. Kenton Cnty., Ky.*,
  No. 10-143-DLB, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011)...............................7

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Selwood v. Virginia Mennonite Ret. Cmty., Inc.*,
  No. CIV.A.5:04 CV 00021, 2004 WL 1946379 (W.D. Va. Aug. 31, 2004 ..........................29

*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) .................................................................................................16

*Sherrod v. Enigma Software Grp. USA, LLC*,
  No. 13-cv-36, 2016 WL 25979 (S.D. Ohio Jan. 4, 2016) .........................................................4

*Smith v. Univ. of Detroit*,
  378 N.W.2d 511 (Mich. App., 1985) .....................................................................................27

*Sowders v. Scratch Fin., Inc.*,
  No. 23-cv-56, 2024 WL 519730 (S.D. Ohio Feb. 9, 2024) ..............................................6, 12

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998). ...............................................................................................13

*Stewart v. Blackwell*,
  444 F.3d 843 (6th Cir. 2006), *vacated on other grounds* (July 21, 2006),
  *superseded*, 473 F.3d 692 (6th Cir. 2007) ..........................................................................9, 19

*DG ex rel. Stricklin v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) ..............................................................................11, 12, 17

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) .................................................................................................11

*Sutton v. St. Jude Med. S.C., Inc.*,
  419 F.3d 568 (6th Cir. 2005) .....................................................................................9, 10, 19

*Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*,
  235 F. Supp. 3d 882 (S.D. Ohio 2017) ..................................................................................12

*Teasel v. Laskowski*,
  No. 17-cv-10987, 2017 WL 6407458 (E.D. Mich. Dec. 15, 2017) ................................9, 10, 22

*Connor B., ex rel. Vigurs v. Patrick*,
  278 F.R.D. 30 (D. Mass. 2011) .............................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................................................5, 13, 15

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ..................................................23

*Weathers v. Peters Realty Corp.*,
  499 F.2d 1197 (6th Cir. 1974) ...............................................4, 23

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ...................................................13

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ...................................................14

**Court Rules**

Fed. R. Civ. P. 23(a)(2)..............................................................13

Fed. R. Civ. P. 23(a)(3)..............................................................15

**Treatises**

7AA Charles Alan Wright, et al., *Fed. Prac. & Proc.* § 1775 (2d ed. 1996) ...............................23

**Other Authorities**

Kaylee McGhee, *Let's Talk About Sexual Assault on* ....................................2

McGhee, *Let's Talk About Sexual Assault on Campus*..................................3

1 *McLaughlin on Class Actions* § 3:4 (20th ed. 2023) .........................................6, 18

U.S. Dep't of Educ., *Educator Sexual Misconduct: A Synthesis of Existing
  Literature*, DOC # 2004-09 (2004),
  https://www2.ed.gov/rschstat/research/pubs/misconductreview/report.pdf ...........................20

3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 7:22 (6th
  ed. 2023) ..........................................................................4

I.      **INTRODUCTION**

This is a class action against Hillsdale College ("Hillsdale") for its failure to implement or enforce appropriate policies and procedures to prevent, report, and respond to sexual misconduct towards students. As a direct result, Hillsdale put Plaintiffs and all members of the proposed class at risk of such assault and compounded the trauma when such incidents occurred, as they did to Plaintiffs Grace Chen, Danielle Villarreal, and an as-yet-unknown (to Plaintiffs) number of other students.

This lawsuit was filed in October 2023. The parties have not yet appeared before the Court and discovery is not yet open. Yet, on the basis of the pleadings alone, Hillsdale moves to strike the class allegations from Plaintiffs' Amended Complaint. It is settled law that such motions are disfavored and generally premature, absent exceptional circumstances not present here. The Court should decline to entertain Hillsdale's attempt to jettison class claims without a full—or even partial—factual record. Any disputed or substantial questions of law are best addressed at the class certification stage, at which time Plaintiffs, with the aid of discovery, will provide the Court with the information it needs to perform the rigorous analysis required by Federal Rule of Civil Procedure 23. Contrary to Hillsdale's arguments, Plaintiffs' allegations show that they will, at the appropriate time—when they move for class certification—be able to fully satisfy the certification standards of Rule 23(a) and (b)(2).

This is not a case about what happened specifically to Plaintiffs, or indeed any individual student. It is a case about Hillsdale's uniform policies and practices (or lack thereof), as written and enforced (or not). In the ordinary course, with the benefit of discovery into Hillsdale's policies and practices, knowledge and conduct, Plaintiffs will demonstrate that they satisfy the requirements for certification. Accordingly, Plaintiffs respectfully request that the Court deny Hillsdale's motion to strike.

## II.    BACKGROUND[1]

Plaintiff Grace Chen is a current student of Hillsdale College. *See* FAC ¶¶ 1, 7. In November 2021, she was sexually assaulted by a fellow student in a dormitory on campus. *Id.* ¶ 68. Plaintiff Danielle Villarreal is a former student of Hillsdale College. *Id.* ¶ 2. In August 2021, she was sexually assaulted by a fellow student a short drive away from Hillsdale's campus. *Id.* ¶ 100. When Plaintiffs reported their assaults to Hillsdale, the school's responses involved mixed messages, delay, blame, broken promises, intimidation, and outright threats of retaliation. *Id.* ¶¶ 70-98, 103-122. Unfortunately, Plaintiffs' experiences were in keeping with Hillsdale's pattern of diminishing and dismissing reports of sexual misconduct towards students. *Id.* ¶ 224.

At Hillsdale, the administration's "failure to take reports of sexual violence seriously, to effectively investigate, and to take prompt remedial action is notorious within the college's student body and has been for several decades." FAC ¶ 63; *id.* ¶ 14 (noting "long history of mismanaging student reports of assault"); *see also id.* ¶¶ 27-28 (online posts indicating that "when someone gets assaulted," Hillsdale's response ranges from disbelief to outright refusal to "deal with it depending on who was involved").[2] A 2018 article in the school newspaper stated that the process of investigating reports is "not well known to students, and its case-by-case approach leaves room for speculation." *Id.* ¶ 13. Hillsdale has received "numerous complaints from female students reporting sexual abuse by their peers" and female students, "including Plaintiffs Chen and Villarreal, repeatedly experienced inadequate 'responses' by the school to their reports of sexual assault and misconduct." *Id.* ¶¶ 210, 26; *see also id.* ¶ 69 (another student

---

[1] The facts of this case are described in more detail in Plaintiffs' Opposition to Hillsdale's Motion to Dismiss, filed contemporaneously. Plaintiffs focus here on the facts relevant to the class allegations.

[2] *See also* Kaylee McGhee, *Let's Talk About Sexual Assault on Campus,* The Collegian (Oct. 4, 2018) https://hillsdalecollegian.com/2018/10/lets-talk-sexual-assault-campus/ (stating that Hillsdale "is associated with so much pain for so many" "ladies of Hillsdale College" who have experienced sexual misconduct on campus).

athlete on the track team told Plaintiff Chen "about her experience of trying to report sexual assault"), ¶ 72 (Plaintiff Chen "heard that her rapist might be going after other female students"). The fact that "such investigations are handled, if at all, more leniently than other violations of Hillsdale's 'Honor Code' is well known amongst Hillsdale students." *Id.* ¶ 26.

Identifying Hillsdale's inadequate Sexual Misconduct Policy as part of the problem, Hillsdale students "have long spoken up about sexual assault on campus and advocated for a stronger and more concrete sexual misconduct policy." FAC ¶ 12; s*ee also id.* ¶ 210 (Hillsdale has been "lobbied by students advocating for changes to the sexual misconduct policy"); ¶ 13 (article in campus newspaper "called for mandatory sexual assault education and improvements to the policy").[3] Nevertheless, Hillsdale's policy remains deficient, and Hillsdale has "ignored the sexual assault and harassment occurring under its watch and allowed it to continue." *Id.* ¶ 210.

Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2), Plaintiffs brought suit on behalf of themselves and a proposed class of others who are similarly situated, defined as "All female students who are or were enrolled at Hillsdale College from October 25, 2017 onwards."[4] FAC ¶ 124. Plaintiffs' Amended Complaint reserves the right to amend the Class definition if discovery and further investigation reveals that the Class should be expanded, reduced, divided into subclasses under Rule 23(c)(5), or modified in any other way. *Id.* ¶ 126.

---

[3] *See also* McGhee, *Let's Talk About Sexual Assault on Campus* (reporting that one female student who engaged with the administration "was never told what the procedure was or even if there was one", saying "[I]f there aren't procedures or a rubric of basic steps, no one's going to know what to do[.] How do you mend the situation in the present and prevent it in the future without that?").

[4] Plaintiffs do not propose a damages class pursuant to Rule 23(b)(3).

### III.    LEGAL STANDARD

In the Sixth Circuit and elsewhere, Rule 12(f) motions to strike are generally disfavored as a "rare remedy." *Nixon v. Anthem, Inc.*, No. 19-cv-00076-GFVT, 2021 WL 4037824, at *2 (E.D. Ky. Sept. 3, 2021) (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)); *Sherrod v. Enigma Software Grp. USA, LLC*, No. 13-cv-36, 2016 WL 25979, at *2 (S.D. Ohio Jan. 4, 2016) (explaining that motions to strike remain disfavored in the Sixth Circuit after *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945, 949 (6th Cir. 2011)).

The defendant faces an "uphill battle" of demonstrating from the face of the complaint that it will be "impossible" to certify the classes alleged by the plaintiff, regardless of any facts the plaintiff may be able to prove.[5] *Carmen v. Health Carousel, LLC*, No. 20-cv-313, 2023 WL 5104066, at *15 (S.D. Ohio Aug. 9, 2023) (citations omitted); *Jimenez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010), *on reconsideration in part*, 765 F. Supp. 2d 986 (E.D. Mich. 2011), citing *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991).

Courts must "exercise caution when striking class action allegations based solely on the pleadings" because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc.*, No. 13-cv-846, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (quoting *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 56 (1st Cir. 2013); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

A motion to strike *class allegations* is even more disfavored than a traditional motion to strike, because it "requires [the] court to preemptively terminate the class aspects of . . .

---

[5] *See also* 3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 7:22 (6th ed. 2023) ("The less discovery that has occurred, the more skeptical courts are of this 'preemptive strike' against class certification and the higher the burden borne by the defendant.").

litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Sauter*, 2014 WL 1814076, at *2 (quoting *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012)).

## IV. ARGUMENT

### A. Motions to strike class allegations are disfavored.

Plaintiffs' class allegations should not be stricken from the Amended Complaint at this early stage of the case. Controlling law provides that class allegations should only be stricken where "no proffered or potential factual development offers *any hope* of altering" a central defect in the class claims. *Pilgrim*, 660 F.3d at 949 (emphasis added). This is because striking class allegations without the benefit of discovery or fulsome class certification briefing "would be inconsistent with the type of 'rigorous analysis' that [courts must] endeavor to undertake in deciding whether to ultimately certify a class." *Progressive Health & Rehab Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242, 247 (S.D. Ohio 2017), citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); s*ee also Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010) (stating that where "briefing on class issues is relatively cursory," it is appropriate to "defer decision on reasonably contested class issues" instead of considering a motion to strike class allegations) (citation omitted).

Courts in the Sixth Circuit routinely reject motions to strike class allegations prior to discovery as premature. *See, e.g., Nixon*, 2021 WL 4037824, at *6 ("Discovery may ultimately demonstrate that the class cannot be certified or that the class definition needs to be revised. However, without any discovery or other detailed evidence before the Court, striking Plaintiffs' class allegations on this ground would be premature."); *Mod. Holdings, LLC v. Corning Inc.*, No. 13-405-GFVT, 2015 WL 1481459, at *7 (E.D. Ky. Mar. 31, 2015) ("Resolution of [motion to

strike class allegations] is deferred until Plaintiffs' motion for class certification and after class discovery has taken place."); *Progressive Health*, 323 F.R.D. at 246 (denying motion to strike class allegations as premature despite fact that Plaintiffs' class definition created an impermissible fail-safe class); *Faktor v. Lifestyle Lift,* No. 09-cv-511, 2009 WL 1565954, at *2 (N.D. Ohio June 3, 2009) (denying motion to strike class allegations as premature where the initial case management conference had not occurred); *Sowders v. Scratch Fin., Inc*., No. 23-cv-56, 2024 WL 519730, at *5 (S.D. Ohio Feb. 9, 2024) (rejecting argument on motion to strike that class definition is overbroad, noting that the Court "may later exclude members of the Putative Class after some factual development" or "utilize 'procedural mechanisms' to prune the class") (citing *Bridging Cmtys., Inc. v. Top Flite Fin. Inc*., 843 F.3d 1119, 1126 (6th Cir. 2016)); 1 *McLaughlin on Class Actions* § 3:4 (20th ed. 2023) ("[I]n most cases discovery must be permitted on matters necessary to resolve the class certification question.") (footnote and citations omitted).

Hillsdale largely ignores the posture of its motion and the governing law on this point, jumping straight to opposing Plaintiffs' not-yet-filed motion for class certification. The few Sixth Circuit cases Hillsdale cites do not support deviating from the "cautionary posture" of denying a motion to strike class allegations before discovery or class certification briefing. *See Progressive Health*, 323 F.R.D. at 246. Both *Jones* and *CoFlley* were product liability cases where the proposed class definitions included millions of consumers who suffered no legal injury or damages related to the products at issue. *Jones v. Lubrizol Advanced Materials, Inc*., 583 F. Supp. 3d 1045, 1055 (N.D. Ohio 2022), *Colley v. Procter & Gamble Co*., No. 16-cv-918, 2016 WL 5791658, at *8 (S.D. Ohio Oct. 4, 2016). The holdings are inapplicable here, where Plaintiffs allege that all female Hillsdale students have been—and continue to be—injured by being subjected to heightened risk of assault due to Hillsdale's failure to implement or enforce

proper sexual assault policies and procedures. And the class allegations were struck in *Oom v. Michaels Cos. Inc*. because the plaintiff had pled an unascertainable and impermissible fail-safe class—problems not present here. No. 16-cv-257, 2017 WL 3048540, at *5 (W.D. Mich. July 19, 2017).[6]

A motion to strike class allegations is a drastic remedy warranted only in the very rare circumstance where a defendant can show that it will be "impossible" to certify the classes alleged by the plaintiff, regardless of any facts the plaintiff may be able to prove. *Jimenez*, 2010 WL 3623176, at *3; *see, e.g. Collins v. Greater Cincinnati Behav. Health Servs*., No. 23-cv-578, 2024 WL 149292, at *5 (S.D. Ohio Jan. 12, 2024) (granting motion to strike class allegations at the pleading stage because a Rule 23 class was prohibited under the relevant statute).

As demonstrated below, this is not that rare case. Plaintiffs are entitled to discovery of Hillsdale's policies and practices, as well as Hillsdale's knowledge of the incidence of assaults on campus and its decision-making in light of that knowledge, to show that class members were subjected to a common policy and practice that constituted a breach of Hillsdale's duty of care towards the class as a whole. The appropriate time and manner to test the propriety of class treatment is when discovery is substantially complete (certainly not before it has even opened), and for the Court to rule on a fully briefed certification motion based on a fulsome record. Hillsdale's motion is premature.

**B.      Plaintiffs meet the pleading standard for class allegations.**

At the pleading stage, all Plaintiffs must do is allege facts sufficient to plausibly suggest that they will be able to meet the requirements for class certification once they have the benefit of discovery. *Schilling v. Kenton Cnty., Ky*., No. 10-143-DLB, 2011 WL 293759, at *4 (E.D. Ky.

---

[6] *Oom* was also wrongly decided because pleading a fail-safe class is not a ground for striking class allegations. *See, e.g., Progressive Health*, 323 F.R.D. at 246.

Jan. 27, 2011) (standard of review on motion to strike class allegations is the same as that applied in deciding a motion to dismiss) (citing *Jimenez*, 2010 WL 3623176, at *3).

This is so even if it appears that Plaintiffs face an uphill climb to achieving class certification, and that the facts might ultimately develop in such a way that class certification would be improper. Just as with motions to dismiss for failure to state a claim, when ruling on a motion to strike the court must view the pleading under attack in the light most favorable to the pleader. *See, e.g., Carmen*, 2023 WL 5104066, at *16 (on motion to strike, resolving doubts about plaintiffs' ability to satisfy Rule 23 elements in favor of plaintiffs because "the Court cannot say it would be 'impossible to certify the class as alleged.'").

Hillsdale has not met its burden to show that Plaintiffs' class allegations are facially and inherently defective such that it will be impossible to certify the class, regardless of the facts Plaintiffs may be able to prove after discovery. Plaintiffs plead, and at the appropriate time will demonstrate, that the Rule 23(a) and (b) requirements are met here. Nothing more is required at this stage.

## C.  There is no fatal flaw in plaintiffs' class definition.

As a threshold matter, in the Sixth Circuit, there is no implied ascertainability requirement in the Rule 23 analysis for certification of a (b)(2) class seeking only injunctive and declaratory relief, as Plaintiffs do here. *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016). Nevertheless, class members can be easily identified by Hillsdale's records: All female students who are or were enrolled at Hillsdale College from October 25, 2017, onwards.[7]

---

[7] Plaintiffs urge the Court to consider this class definition as a "placeholder" that may be modified or narrowed at a later stage. *See Kirkbride v. Kroger Co*., No. 21-cv-0022, 2022 WL 2703960, at *12 (S.D. Ohio July 12, 2022) (denying motion to strike class allegations as premature where plaintiffs pled a nationwide class as a "placeholder" to be refined after class discovery and analyzed at class certification); *see also Galoski v. Stanley Black & Decker, Inc*., No. 14 CV 553, 2014 WL 4064016, at *5 (N.D. Ohio Aug. 14, 2014) (stating that the scope of

Hillsdale's concern that the class is overbroad because it includes students who were not themselves assaulted (and therefore, they say, lack standing) misconceives the nature of Plaintiffs' claim and the requirements of the law. This case is about Hillsdale's duty to protect its students and its failure to do so by neglecting to adopt and enforce adequate policies and practices to do so. Regardless of whether all, or even most female students were sexually assaulted as a result of those failures, *all* were subjected to an avoidable heightened risk of assault.

The Sixth Circuit has recognized that an increased risk of future actual harm can constitute a legal injury-in-fact sufficient to confer Article III standing in multiple contexts. *See, e.g., Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (data breach); *Stewart v. Blackwell*, 444 F.3d 843, 854 (6th Cir. 2006) (voting), *vacated on other grounds* (July 21, 2006), *superseded*, 473 F.3d 692 (6th Cir. 2007); *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 574 (6th Cir. 2005) (medical monitoring). And district courts in this Circuit have allowed "heightened risk" claims in analogous circumstances. *See, e.g., Teasel v. Laskowski*, No. 17-cv-10987, 2017 WL 6407458, at *5 (E.D. Mich. Dec. 15, 2017) (denying motion to dismiss claims that inadequate supervision of patients increased plaintiff's risk of being subjected to violence in mental institution because plaintiff "should not be required to wait until he actually suffers [physical harm]" and "an increased risk of future harm can, if severe enough, constitute actual injury for purposes of standing") (citing *Helling v. McKinney*, 509 U.S. 25, 34-35 (1993)); *Rouse v. Washington*, No. 20-cv-11409, 2021 WL 2434196, at *12 (E.D. Mich. June 15, 2021) (finding

---

certification is best determined after class discovery has been completed, and if any adjustments to the class definition are warranted, they can be addressed at that time).

that plaintiffs subjected to a heightened risk of exposure to COVID-19 as a result of prison's inadequate pandemic response alleged an actual legal injury).[8]

That concept from *Teasel* is key: when the risked harm is severe enough, the law does not require waiting until irreparable damage (such as that caused by sexual assault) occurs before providing relief. In these types of cases, "[w]aiting for a plaintiff to suffer physical injury before allowing any redress whatsoever is both overly harsh and economically inefficient." *Sutton*, 419 F.3d at 575; see also *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("[A] remedy for unsafe conditions need not await a tragic event.").

It is true that a proposed class "may be deemed overly broad if it 'would include members who have not suffered harm at the hands of the Defendant *and are not at risk to suffer such harm.*'" *Brashear v. Perry Cnty., Ky.*, No. 06-143-DCR, 2007 WL 1434876, at *2 (E.D. Ky. May 14, 2007) (citation omitted) (emphasis added). But especially where plaintiffs seek only declaratory and injunctive relief, a proper class definition can include class members who could have been, but were not in fact, harmed (i.e. assaulted). *See Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 89 (M.D. Tenn. 2004) (finding defendant's objection to overbroad class definition was not fatal to Rule 23(b)(2) certification); *see also id.* ("Many other courts in the Sixth Circuit and elsewhere have [found] that certification of a Rule 23(b)(2) class is proper, despite the fact that not all class members may have suffered the injury posed by the class

---

[8] Hillsdale's reliance on *Henry v. Dow Chem. Co.,* Mot. at 17-18. is unavailing. 473 Mich. 63, 72 (2005). *Henry*, which addressed whether the Michigan Supreme Court should recognize a new cause of action for medical monitoring in the toxic tort context, does not foreclose Plaintiffs' tort claims, explained that plaintiffs cannot allege claims for "injuries they may suffer in the future." *Id.* at *72. Here, the heightened risk of assault at Hillsdale is a "present injury, not fear of an injury in the future" that gives rise to Plaintiffs' tort claims. *Id.* at *73. *Henry* also noted that the plaintiffs' medical monitoring claim was distinguishable from other causes of action "in which a plaintiff may recover for economic losses without showing present physical harm." *Id.* at *78.

representatives, as long as the challenged policy or practice was generally applicable to the class as a whole.") (citing cases).

The "same injury" required under a Rule 23 analysis is not about damages, but about being subjected to the same alleged course of misconduct. The common question (and answer) that binds the class together turns not on individual assault and damages but on being impermissibly placed in danger (the legal injury). *See Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("[C]lass members can assert [] a single common complaint even if they have not all suffered actual [harm/damages]; demonstrating that all class members are *subject* to the same harm will suffice.") (citations omitted);[9] *Suchanek v. Sturm Foods, Inc*., 764 F.3d 750, 758 (7th Cir. 2014) (class definition is too broad if it includes those "who *could not* have been harmed" but is acceptable if it includes those "who *were not* harmed") (citation omitted); *Ruiz Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1137 (9th Cir. 2016) (affirming certification of class including members who were not harmed, because of the "potential for unlawful conduct in the absence of harm"); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1196 (10th Cir. 2010) ("Though each class member may not have actually suffered abuse, neglect, or the risk of such harm, Defendants' conduct allegedly poses a risk of impermissible harm to all children in [their] custody.").

Put differently, all Class members were subjected to Hillsdale's failure to adopt and enforce adequate policies and practices, and the resulting heightened risk (the common legal

---

[9] *See also Hill v. Snyder*, 308 F. Supp. 3d 893, 914 (E.D. Mich. 2018), *aff'd*, 900 F.3d 260 (6th Cir. 2018) (rejecting defendants' commonality challenge because commonality "requires only that a putative class share either the injury *or the immediate threat of being subject to the injury*") (quoting *Baby Neal,* 43 F.3d at 60-61) (emphasis added); *Dwayne B. by Stempfle v. Granholm*, No. 06-13548, 2007 WL 9752831, at *3 (E.D. Mich. Feb. 15, 2007) (holding that "[t]he fact that all plaintiffs are subject to the risk of deprivation of services to which they are currently entitled . . . suffices to support their common claim[.]") (quoting *Baby Neal,* 43 F.3d at 62).

injury) flowing from that failure. That some students were actually sexually assaulted or harassed (the individual harm/damage) as a result of that conduct and others were not does not render the class definition overbroad. *Id.* (And even if it did, overbroadness is not grounds to strike class allegations at the pleading stage, *see Sowders*, 2024 WL 519730, at *5.)

Plaintiffs contend that the current class definition suffices, and do not believe that revision is necessary to overcome Hillsdale's motion to strike. Nevertheless, if this Court disagrees and identifies a defect in the definition that it believes must be cured now, at the pleading stage, the appropriate remedy is to grant Plaintiffs leave to amend. *See, e.g., Sauter*, 2014 WL 1814076, at *2 (finding plaintiff improperly pled a fail-safe class, but granting leave to amend the pleadings); *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, 235 F. Supp. 3d 882, 891 (S.D. Ohio 2017) (same).

**D.      At class certification, Plaintiffs will be able to show the proposed class satisfies Rule 23.**

To be clear: this Section IV.D addresses Plaintiffs' burden to show that, at a later stage in the litigation, it will be *possible* to certify the class alleged. *See Jimenez*, 2010 WL 3623176, at *3. But Plaintiffs have not yet moved for class certification, and without the benefit of discovery or fulsome briefing, the Court cannot complete the "rigorous analysis" required to determine whether to certify a class. *See Progressive Health*, 323 F.R.D. at 247.

**1.      The proposed class satisfies the elements of Rule 23(a).**

At class certification, Plaintiffs must first show that the proposed class satisfies Rule 23's four prerequisites: numerosity, commonality, typicality, and adequacy.[10] Fed. R. Civ. P. 23. When they move for class certification, Plaintiffs will be able to meet this burden.

---

[10] Hillsdale does not contest that the proposed class is sufficiently numerous or that Plaintiffs and her counsel are adequate representatives.

### a.   Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Though Plaintiffs' claims must raise "common *answers* apt to drive the resolution of the litigation," a single common question of law or fact may suffice. *Wal-Mart*, 564 U.S. at 350 (citation omitted); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838, 853 (6th Cir. 2013), citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Commonality "does not require that all members of the class have an identical injury." *Kinder v. Nw. Bank*, 278 F.R.D. 176, 183 (W.D. Mich. 2011), citing *Mayer v. Mylod,* 988 F.2d 635, 640-41 (6th Cir.1993).

Here, common questions include:

(1) whether Hillsdale had a duty of care and safety towards its students, including protecting them from, and properly responding to, incidents of sexual assault;

(2) whether Hillsdale breached that duty of care and safety towards its students by failing to have or enforce proper policies and procedures for the prevention of, and proper response to, sexual assault;

(3) whether Hillsdale knew or should have known that emotional distress was the likely result of failing to have or enforce proper policies and procedures for the prevention of, and proper response to, sexual assault;

(4) whether Hillsdale created a hostile educational environment by failing to have and implement policies to prevent sexual abuse;

(5) whether Hillsdale misrepresented the qualities and safety of a Hillsdale education;

(6) whether Hillsdale's failure to reveal its lack of policies to prevent sexual assault was a material fact;

(7) whether Hillsdale's failure to reveal its history of mismanaging student reports of sexual assault was a material fact;

(8) whether Hillsdale was deliberately indifferent to incidence of students' sexual assault and harassment; and

(9) whether Hillsdale took adverse action against students engaging in protected activity under Title IX.

As a threshold matter, the Sixth Circuit's decision in *Doe v. City of Memphis* cautions against striking class allegations based on questions about commonality before discovery. 928 F.3d 481, 497 (6th Cir. 2019). The district court had found commonality lacking and struck the class allegations, but the Sixth Circuit reversed the decision as premature. *Id.* In doing so, the court noted that discovery might have provided the plaintiffs with evidence of commonality warranting certification—which was particularly probable where the plaintiffs' theory turned on whether there was a pattern or practice of treating sexual assault crimes differently from others. *Id.*

Here, at class certification, commonality will be readily satisfied because Plaintiffs challenge a college-wide course of conduct that applies to the class as a whole: Hillsdale's uniform failure to adopt and enforce policies to appropriately prevent and respond to sexual misconduct towards students. *See, e.g., Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 543 (6th Cir. 2012) (affirming certification and satisfaction of commonality requirement where plaintiffs alleged a single course of conduct—failure to implement a system that could have prevented the harms class members suffered—gave rise to each class members' claims); *Dwayne B.*, 2007 WL 9752831, at *3 (granting certification and applying analysis from *Baby Neal*, in which all plaintiffs were subject to the risk of the deprivation of services to which they were

entitled, to find commonality).[11] What Hillsdale's duties to the class were, and whether it breached them, will not—cannot—vary individual by individual; the answer is yes or no for the entire class.

This is not, as Hillsdale styles it, a personal injury case in which individualized causation issues defeat commonality. Mot. at 5. Hillsdale's liability is predicated solely on its own policies and procedures, and its uniform, campus-wide conduct in failing to implement or enforce them – not as to any one individual, but as to the student body as a whole The fact that Plaintiffs' claims involve personal injury does not render them inherently unsuitable for class treatment, as there is no bar on personal injury class actions (particularly for injunctive relief under Rule 23(b)(2), and the common injury here is a heightened risk of assault.

Plaintiffs have sufficiently alleged facts showing that at the class certification stage, Plaintiffs will be able to prove commonality.

### b.    <u>Typicality</u>

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). To be typical, a class representative's claim need not always involve the same facts or law, so long as there is a

---

[11] *See also Brown v. Cook Cnty.*, 332 F.R.D. 229, 241 (N.D. Ill. 2019) (finding commonality satisfied where common questions included: whether defendants' policies led to attacks against public defenders; whether defendants discouraged plaintiffs from reporting; and whether defendants' delay in making changes to reduce attacks was unreasonable); *Connor B., ex rel. Vigurs v. Patrick*, 278 F.R.D. 30, 34 (D. Mass. 2011) (finding commonality satisfied where plaintiffs alleged that various flaws within foster care system "expose[d] the entire Plaintiff class to an unreasonable risk of harm" and specifically rejecting argument that *Wal-Mart v. Dukes*, which consisted of 1.5 million class members across thousands of stores with varying policies, required a different outcome); *Caroline C. By & Through Carter v. Johnson*, 174 F.R.D. 452, 464 (D. Neb. 1996) (finding commonality satisfied where the "issues at the core of this litigation, specifically whether the policies and practices of the defendants with respect to their control of sexual perpetrators increase the risk of rape and sexual assault, are common to all class members, and all members of the class are or will be subject to the effects of those policies") (citation omitted).

common element of fact or law. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996),

citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976). A plaintiff's claim is

typical if it "arises from the same event or practice or course of conduct that gives rise to the

claims of other class members, and if his or her claims are based on the same legal theory." *In re*

*Am. Med. Sys., Inc.*, 75 F.3d at 1082 (citation omitted).

The fact that Plaintiffs and class members do not share identical facts is not fatal to

typicality because they share claims stemming from the same challenged policy or practice.

Hillsdale's failure to implement or enforce adequate policies and procedures to protect students

from assault, and to respond to assaults that do occur, applied to all class members, including

Plaintiffs. FAC ¶ 131. The nature of Plaintiffs' claims are the same as all class members' claims:

that Hillsdale's Sexual Misconduct Policy is inadequate as a matter of law. And Hillsdale's

defenses will be common to all class members: that it was not required to adopt and enforce

better policies and practices to protect its female students. *See, e.g., Kimber Baldwin Designs,*

*LLC v. Silv Commc'ns, Inc.*, No. 16-cv-448, 2016 WL 10520133, at *3 (S.D. Ohio Dec. 15,

2016) (finding typicality satisfied where "the claims arise from the same alleged uniform

practices").

Further, Plaintiff Chen and Villarreal's assaults do not render them atypical of the class,

because both they and class members were subject to the same risk as a result of Hillsdale's

conduct. *See Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 649 (D.N.H. 2020) ("While

the class representatives' experiences include extreme examples of harassment, they are also

emblematic of the baseline of sexual harassment that pervaded the Department."); *see also*

*Brown*, 332 F.R.D. at 242 ("That some of the plaintiff class members may have experienced []

attacks with less frequency does not mean they were uninjured by the hostile work environment

those attacks created. Rather, they may have simply been injured to a lesser extent—an issue better suited for resolution at a later stage of the litigation.").

Courts have found typicality satisfied where a group of putative class members are exposed to the systematic failures of an institution. *Rapuano*, 334 F.R.D. at 648 (citing cases). More specifically, courts have found typicality satisfied where those failures placed the class at a heightened risk of harm/damages. *See, e.g., Caroline C.*, 174 F.R.D. at 465 (finding typicality satisfied where "the named plaintiffs' allegations that the policies and practices of the defendants have increased the risk of rapes and assaults by sexual perpetrators are typical of those of the other class members"); *DG ex rel. Stricklin*, 594 F.3d at 1199 ("The harm and threat of harm suffered by the Named Plaintiffs as a result of OKDHS's allegedly deficient monitoring practices is typical of the harm and threat of harm suffered by all children in the class because all foster children are subject to OKDHS's challenged, agency-wide monitoring policies.").

*Dwayne B.* is particularly instructive. 2007 WL 9752831, at *4. There, the court rejected the defendants' argument that typicality was not met because "the vast majority of the putative class receives appropriate services, treatment, and placement." *Id*. This ignored that the plaintiffs' "common theme of attacking [defendant's] systemwide failure to comply with its legal mandates is equally central to the claims of the named plaintiffs as it is to the claims of the absent class members." *Id*. (citing *Baby Neal*, 43 F.3d at 63) (finding typicality satisfied after observing that "[a]t any one time, the plaintiffs do not suffer from precisely the same deficiency, but they are all alleged victims of the systemic failures"; "they each potentially face all of the system's deficiencies.").

Plaintiffs have sufficiently alleged facts showing that at the class certification stage, Plaintiffs will be able to prove typicality.

2.    **Plaintiffs injunctive relief claim is valid, and the proposed class may be maintained under Rule 23(b)(2).**

Plaintiffs claim that Hillsdale's failure to set and enforce appropriate policies creates an actual, imminent, and direct threat of irreparable harm to Plaintiff Chen and the Class in the form of sexual assault, sexual harassment, and emotional trauma for which monetary compensation is inadequate. FAC ¶¶ 147-151, *see also id.* ¶ 208 n. 36 (discussing how both assault and just being in an environment of heightened risk of assault are traumas that physiological effects on the brain which impair students' ability to learn), citing Bessel van der Kolk, The Body Keeps Score 21 (Viking, 2014). Plaintiffs seek injunctive relief in the form of measures Hillsdale should be ordered to take to best prevent and respond to sexual misconduct towards students. *See id.* ¶ 154 (providing examples of appropriate injunctive relief).

Certification under Rule 23(b)(2) is appropriate where the party seeking it shows that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[12]

a.    <u>**Plaintiffs' injunctive relief claim is valid.**</u>

As an initial matter, Plaintiffs plead a valid claim for injunctive relief here, contrary to Hillsdale's contention. Mot. at 23.

To demonstrate irreparable harm, plaintiffs must show that without the requested relief, they will suffer "actual and imminent" harm rather than harm that is "speculative or unsubstantiated." *Abney v. Amgen, Inc*., 443 F.3d 540, 552 (6th Cir. 2006) (affirming denial of preliminary injunction where clinical data submitted by the defendant rebutted plaintiffs' claim

---

[12] *See also* 1 *McLaughlin*, § 5:15 (Rule 23(b)(2) is "most commonly relied upon by litigants seeking institutional reform in the form of injunctive relief.") (quoting *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 692 (S.D.N.Y. 1996), *order aff'd*, 126 F.3d 372 (2d Cir. 1997)).

that requested treatment was safe and effective); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (noting that on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice"). The law is clear that the "threat of future harm can satisfy this requirement as long as there is a 'substantial risk' that the harm will occur." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019), (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). As discussed above, the Sixth Circuit has upheld risk-of-future-harm claims in multiple contexts. *See, e.g., Galaria*, 663 F. App'x at 388 (data breach); *Stewart*, 444 F.3d at 854 (voting), *Sutton*, 419 F.3d at 574 (medical monitoring).

As evidenced by the experiences of Plaintiffs Chen and Villarreal, the increased risk Plaintiffs point to is far from speculative or unsubstantiated. Plaintiffs allege that, for years, Hillsdale mishandled student reports of sexual assault and ignored students' pleas to strengthen its Sexual Misconduct Policy. FAC ¶¶ 12-14. It would be an absurd result to require that Plaintiff Chen be repeatedly assaulted (or other class members to be assaulted) in order to prove that a heightened risk of assault exists at Hillsdale. *See Sutton*, 419 F.3d at 575 ("Waiting for a plaintiff to suffer physical injury before allowing any redress whatsoever is both overly harsh and economically inefficient."); *see also Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002) (in environmental cases, "in contrast to many other types of harms, monetary compensation may well not adequately return plaintiffs to their original position").

Further, Plaintiffs allege that one ripple effect of the institutional failures at Hillsdale is that female students are discouraged from reporting assaults when they do occur—both because of the known risk of retaliation, and because such reports rarely result in meaningful and

effective responses.[13] *Id.* ¶¶ 21-29. Plaintiffs Chen and Villarreal's sexual assaults provide examples of instances in which the heightened, actual, and imminent risk that female Hillsdale students face translated into assault. *Id.* ¶ 224. So long as Hillsdale continues to utilize deficient practices and procedures to investigate and respond to instances of sexual assault, class members remain in an unsafe environment.[14] *Id.* ¶ 66; *see Rouse*, 2021 WL 2434196, at *12 (plaintiffs subjected to heightened risk of exposure to COVID-19 as a result of prison's inadequate pandemic response alleged "an actual harm"); *see also Doe 1 v. Univ. of San Francisco*, No. 22-cv-01559-LB, at 6 (N.D. Cal. Dec. 1, 2023)  (upheld a class claim for injunctive relief on behalf of "All members of the University of San Francisco baseball team since 2000," finding this "is not merely a case about two bad apples: it is about USF's alleged failure to address a systemic issue")[15].

Plaintiffs respectfully submit that *Ramsay v. Frontier, Inc.*,„ which Hillsdale relies on in challenging Plaintiffs' request for injunctive relief, Mot. at 25-26, was simply wrong on the law, and also distinguishable. *Ramsay*, No. 19-cv-03544-CMA-NRN, 2020 WL 4557545, at *17 (D. Colo. July 30, 2020), *report and recommendation adopted*, No. 19-cv-03544-CMA-NRN, 2021 WL 651021 (D. Colo. Feb. 19, 2021).

First, *Ramsay* was wrong. Had the *Ramsay* plaintiffs followed the court's logic and narrowed the class to only those passengers who had been sexually assaulted (as opposed to all passengers who faced the risk of assault), the class definition would have been impermissibly

---

[13] *See also*, *generally*, U.S. Dep't of Educ., *Educator Sexual Misconduct: A Synthesis of Existing Literature*, DOC # 2004-09 (2004), https://www2.ed.gov/rschstat/research/pubs/misconductreview/report.pdf (noting that the lack of robust reporting systems contributes to the continuation of sexual misconduct on school campuses) (cited at FAC ¶ 30).

[14] At a later stage in the litigation, an expert could quantify how Hillsdale's heightened risk as a result of its inadequate policies and practices compares to the baseline risk at other colleges.

[15] A copy of this opinion is attached as **Exhibit A**.

fail-safe. *See Olean Wholesale Grocery Cooperative., Inc. v. Bumble Bee Foods LLC*, 31 F.4th

651, 669 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*,

143 S. Ct. 424, 214 (2022) ("A court may not, however, create a "fail safe" class that is defined

to include only those individuals who were injured by the allegedly unlawful conduct."). *Ramsay*

also misconstrued the nature of Plaintiffs' injury, styling it as a speculative "generalized fear of

future sexual assaults" as opposed to the actual and imminent injury of an increased risk of harm.

*Ramsay*, 2020 WL 4557545, at *16. The court there missed that the focus was on Frontier's

policies and their effects, not the physical assaults that sometimes flowed from those failures.

And even if it were not wrong, *Ramsay* is distinguishable. In *Ramsay*, the proposed class

included "tens of millions" of Frontier airline passengers, male and female, children and adults.

*Ramsay*, 2020 WL 4557545, at *4. *Ramsay* characterized the plaintiffs as "voluntarily flying on

an airline where there are no allegations of any greater likelihood of sexual assault compared to

any other airline." *Id.* at *17. Here, Plaintiffs repeatedly allege that the risk of sexual assault for

female students at Hillsdale is heightened beyond the baseline for college campuses. *See, e.g.*,

FAC at ¶¶ 1, 203, 207. Further, *Ramsay* suggested that the plaintiffs there could "elect not to ride

the dangerous [airline] until changes are made"—but it would be wholly unreasonable to require

class members to leave Hillsdale instead of suing for an injunction to mandate their school do its

duty to protect their safety. *Ramsay*, 2020 WL 4557545, at *17.

Nor is there an issue with standing, contrary to Hillsdale's argument. Mot. at 16.

Plaintiffs' request for injunctive relief may proceed "so long as even just one of the plaintiffs has

standing to bring such a claim[.]" *Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788, 813 (M.D. Tenn.

2016). Plaintiff Chen, as a current student of Hillsdale, satisfies this requirement. FAC ¶ 1.

Hillsdale cites *Rouse v. Caruso* for the proposition that a class cannot contain members

no longer at the defendant institution, but what was fatal there was that *none* of the named

plaintiffs were still incarcerated and that plaintiffs' $10 million in compensatory damages could not be characterized as "merely incidental" to the request for injunctive relief. No. 06-CV-10961, 2013 WL 588916, at *6 (E.D. Mich. Jan. 7, 2013), *report and recommendation adopted*, No. 06-cv-10961, 2013 WL 569638 (E.D. Mich. Feb. 13, 2013).

Hillsdale's reliance on *Clapper* is unavailing. Mot. at 25. *Clapper*'s warning about circumstances where standing "depends on the unfettered choices made by independent actors not before the courts" relates to whether there is an "attenuated chain of inferences" between the plaintiff's harm and the defendant's conduct. *Clapper*, 568 U.S. at 414 n.5. But cases in this context indicate that where the potential perpetrators are within the control of the defendant—such as students subject to a university's policies—this consideration is not a bar to standing.[16]

In *Doe v. University of Tennessee*, for example, current and former female students brought an action against their university, alleging that the school's policies rendered female students vulnerable to sexual assault. 186 F. Supp. 3d at 812-13. The court declined to dismiss the plaintiffs' claim for injunctive relief, finding that the current student plaintiff had standing based on her "increased risk of sexual assault" by male athletes due to the university's inadequate policies. *Id*. at 813-14; *see also Doe v. Baylor Univ*., 240 F. Supp. 3d 646, 662 (W.D. Tex. 2017) (denying dismissal where Baylor's custom of inadequate handling of sexual assault "created a heightened risk of sexual assault, thereby inflicting the injury"); *Teasel*, 2017 WL 6407458, at *5 (denying motion to dismiss for lack of standing against mental institution for

---

[16] Contrast this with the long line of inferences that would have been required to find standing in *D.T. v. Sumner County Schools*: "D.T.'s parents say they are injured because: *if* D.T. regresses at his new private school, and *if* they choose to disenroll him, and *if* they choose not to enroll him in another state-approved school, the state *may* choose to prosecute them for truancy again." 942 F.3d 324, 327 (6th Cir. 2019) (emphasis in original); Mot. at 25. Here, there is no such attenuation—the logic is simple: if Hillsdale's inadequate policies are not remedied, Plaintiffs and Class members will continue to face an avoidable heightened risk of sexual assault.

inadequate policies which plaintiff alleged subjected him to heightened risk of violence from other patients and staff).[17]

> **b.  <u>The proposed class may be maintained under Rule 23(b)(2).</u>**

At class certification, the key to a Rule 23(b)(2) analysis is whether the challenged conduct or luck of conduct is premised on a ground that is applicable to the entire class. *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012), citing 7AA Charles Alan Wright, et al., *Fed. Prac. & Proc.* § 1775 (2d ed. 1996). The interests of the members of the class must be cohesive, meaning that unitary adjudication of claims is possible without individualized determinations. *A.M.C. v. Smith*, 620 F. Supp. 3d 713, 735 (M.D. Tenn. 2022). Critically, all class members need not be actually damaged by the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2). *See Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been [damaged] by the challenged practice, a class may nevertheless be appropriate.") (citations omitted). For this reason, classes seeking declaratory or injunctive relief can be much more broadly defined than classes seeking damages. *Coleman*, 220 F.R.D. at 90, citing *Weathers*, 499 F.2d at 1200.

Allegations of systemic failures like those at issue here are precisely what Rule 23(b)(2) certification is for. If Plaintiffs prevail, the Court could craft a single injunction requiring Hillsdale to implement established best-practices that would address those failures for the entire class. That the class may include individuals who have been accused of sexual assault does not run afoul of the cohesion requirement. Class members need not be identically situated—it is

---

[17] These differ from Hillsdale's authority *Aldrich v. Nat'l Collegiate Athletic Ass'n*, 565 F. Supp. 3d 1094, 1102 (S.D. Ind. 2021) (rejecting as speculative risk of sexual assault by NCAA coaches where plaintiff was a current student athlete who was not sexually assaulted or otherwise injured by her coaches, and known assaults purportedly giving rise to the risk occurred more than twenty years earlier by a different coach), Mot. at 19.

sufficient that they were all subject to the same challenged policies and practices. *See Parsons v. Ryan*, 754 F.3d 657, 688-89 (9th Cir. 2014) ("[A]ll members of the putative class and subclass are allegedly exposed to a substantial risk of serious harm by a specified set of centralized [correctional] policies and practices of uniform and statewide application. While each of the [correctional] policies and practices may not affect every member of the proposed class and subclass in exactly the same way, they constitute shared grounds for all inmates in the proposed class and subclass. . . . rendering certification under Rule 23(b)(2) appropriate.") (citation omitted).

And the objective here—increased transparency, accountability, and fairness in the sexual assault investigation and response process—will benefit *all* students, not just survivors of assault. *See, e.g., Dwayne B.*, 2007 WL 9752831, at *5 (certifying Rule 23(b)(2) class where plaintiffs alleged systemic failures to provide and maintain legally mandated processes critical to the safety of class members in foster care system); *Biediger v. Quinnipiac Univ.*, No. 09cv621 (SRU), 2010 WL 2017773, at *8 (D. Conn. May 20, 2010) (certifying Rule 23(b)(2) class of female students alleging university uniformly discriminated against class members by failing to allocate them equal athletic participation opportunities and benefits).

Because "either [Hillsdale's] practices violate [its] legal obligations to all class members or to none," the class is cohesive. *See A.M.C.*, 620 F. Supp. 3d at 735. And because an injunction "could be fashioned that would provide relief to each member of the class," indivisibility is present. *See id.* (citations omitted). Thus, the proposed class may be maintained under Rule 23(b)(2).

### 3.     In the alternative, the proposed class may be maintained under Rule 23(c)(4).

At a minimum, the Court can allow Plaintiffs' class allegations to proceed under Federal Rule of Civil Procedure 23(c)(4). *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may

be brought or maintained as a class action with respect to particular issues."); *see also Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018) ("Rule 23(c)(4) contemplates using issue certification to retain a case's class character where common questions predominate within certain issues and where class treatment of those issues is the superior method of resolution.") (citations omitted). Issue certification can be proper even if "important matters" such as actual injury, causation, and damages must be tried separately. *Id.* at 415, citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016).

Here, issue certification would be appropriate as to: (1) whether Hillsdale had a duty of care and safety towards its students, including protecting them from, and properly responding to, incidents of sexual assault; (2) whether Hillsdale breached that duty of care and safety towards its students by failing to have or enforce proper policies and procedures for the prevention of, and proper response to, sexual assault; (3) whether Hillsdale knew or should have known that emotional distress was the likely result of failing to have or enforce proper policies and procedures for the prevention of, and proper response to, sexual assault; (4) whether Hillsdale created a hostile educational environment by failing to have and implement policies to prevent sexual abuse; (5) whether Hillsdale misrepresented the qualities and safety of a Hillsdale education; (6) whether Hillsdale's failure to reveal its lack of policies to prevent sexual assault was a material fact; (7) whether Hillsdale's failure to reveal its history of mismanaging student reports of sexual assault was a material fact; (8) whether Hillsdale was deliberately indifferent to incidence of students' sexual assault and harassment; and (9) whether Hillsdale took adverse action against students engaging in protected activity under Title IX.

Should the Court decline to allow Plaintiffs' proposed Rule 23(b)(2) class to proceed, the Court can utilize Rule 23(c)(4) issue certification as to some or all of these common issues.

### 4.      Plaintiffs' claims are suitable for class treatment.

Each of plaintiffs' claims are suitable for class treatment.[18]

### a.      Negligence.

Hillsdale's challenges to class treatment of Plaintiffs' negligence claims rests on its misinterpretation of Plaintiffs' claims as personal injury claims. Plaintiffs allege that Hillsdale owed Plaintiffs a duty of care, breached that duty of care by exposing Plaintiffs to an unacceptable and unusually high risk of sexual assault and failing to properly respond to assaults that did happen, and that such breach caused Plaintiffs harm in the form of the increased risk of sexual assault. FAC ¶¶ 136-154.

Courts have certified negligence class claims in similar contexts. *See, e.g., Rapuano,* 334 F.R.D. at 644 (certifying class negligent supervision claims based on allegations that college did not take adequate steps to protect students from sexual misconduct);[19] *Ham v. Swift Transp. Co., Inc.*, 275 F.R.D. 475, 487-88 (W.D. Tenn. 2011) (certifying class negligence claims, noting that defendant's arguments against certification focus on the calculation of damages for individual plaintiffs "rather than the overarching questions regarding [defendant's] procedures"); *see also Mod. Holdings*, 2015 WL 1481459, at *5 (on motion to strike, rejecting as premature defendants' argument that claims for negligence in the environmental mass tort context are rarely appropriate for class certification).

---

[18] For the reasons stated in Plaintiffs' Opposition to Hillsdale's Motion to Dismiss, Plaintiffs plausibly allege each of these claims on an individual basis as well.

[19] Though the court was considering whether to certify a class for the purposes of settlement, the court specifically noted that the standard applied was not less rigorous or more lenient than it would have been at class certification. *Rapuano*, 334 F.R.D. at 644. Further, though Plaintiffs here allege traditional negligence as opposed to negligent supervision, the analysis is much the same because both claims "rais[e] issues predominantly susceptible to classwide proof": whether Hillsdale owed plaintiffs a duty of care, whether it knew or should have known of a risk of sexual assault, and whether the harassment that occurred was foreseeable based on what Hillsdale knew. *See id.* at 652.

**b.       Intentional Infliction of Emotional Distress ("IIED").**

Plaintiffs allege that Hillsdale knew or should have known that emotional distress was the likely result of failing to have or enforce policies that prevent sexual assault and mismanaging student reports of sexual assault. FAC ¶¶ 155-163. The focus of this inquiry is on Hillsdale: what it knew or should have known and whether its conduct was intentional or reckless.

IIED claims have been certified for class treatment where every member of the putative class suffered similar exposure of harm and therefore a similar fear of the consequences of such risk. *See, e.g., In re Fernald Litig.*, No. C-1-85-149, 1986 WL 81380, at *1 (S.D. Ohio Sept. 18, 1986); *cf. Levell v. Monsanto Rsch. Corp.*, No. 95cv312, 2005 WL 8161926, at *7 (S.D. Ohio Sept. 28, 2005) (denying certification of IIED claims where the risk and type of exposure varied for each class member, and some faced no risk at all). Here, all female class members at Hillsdale face the same avoidable, heightened risk of sexual assault on campus.

**c.       Elliott-Larsen Civil Rights Act ("ELCRA").**

Plaintiffs allege that Hillsdale created and maintains a sexually discriminatory educational environment in violation of the ELCRA. FAC ¶¶ 164-180. Hillsdale points to no case holding that ELCRA claims are not amenable for class treatment, and indeed, courts have found otherwise. *See, e.g.*, *Ries v. McDonald's USA, LLC*, No. 20-cv-2, 2021 WL 6133437, at *11 (W.D. Mich. Dec. 29, 2021) (certifying class ELCRA claims where employee class members "experienced different degrees or types of harassment" and some "may not have experienced any direct physical harassment," but all were allegedly subject to hostile work environment); *Smith v. Univ. of Detroit*, 378 N.W.2d 511, 512 (Mich. App., 1985) (discussing certified class ELCRA claims where students alleged effect of university's grading policies and practices was disparate impact on Black class members). And discussed in Section IV.C, *supra*, a

risk of harm can constitute a legal injury in fact sufficient to confer Article III standing. There is nothing unique about the ELCRA that mandates otherwise.

### d.      Michigan Consumer Protection Act ("MCPA").[20]

:Plaintiffs allege that Hillsdale violated the MCPA by misrepresenting the safety of a Hillsdale education. FAC ¶¶ 181-193. Again, courts have recognized that MCPA claims can be adjudicated on a class-wide basis. *Gasperoni v. Metabolife, Int'l In*c., No. 00-71255, 2000 WL 33365948, at *7 (E.D. Mich. Sept. 27, 2000) (certifying class MCPA claims, noting that the Michigan Supreme Court directed that the MCPA be construed liberally to broaden consumers' remedy, "especially in situations involving consumer frauds affecting a large number of persons") (quoting *Dix v. Am. Bankers Life Assurance Co. of Fla.*, 415 N.W.2d 206, 209-10 (Mich. 1987)); *Gilkey v. Cent. Clearing Co*., 202 F.R.D. 515, 526 (E.D. Mich. 2001) (same).

### e.      Title IX.

Finally, Plaintiffs allege violations of Title IX for gender discrimination and retaliation. FAC ¶¶ 194-217, 218-226. Courts have certified classes alleging both types of claims.[21] *See, e.g., Rapuano,* 334 F.R.D. at 652 (certifying class Title IX gender discrimination, noting that "the need for some individualized findings does not defeat predominance"—a lower bar than Plaintiffs must meet here for a Rule 23(b)(2) class); *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, 192 F.R.D. 568, 572 (W.D. Mich. 1999) (certifying class Title IX gender discrimination claims on behalf of all present and future female students who participated in schools' athletic

---

[20] Plaintiffs address Hillsdale's argument that the MCPA does not apply to Plaintiffs' claims in Plaintiffs' Opposition to Hillsdale's motion to dismiss. In short, *MacDonald* addressed MCPA claims in the context of the purchase of a law school education—a graduate, professional degree— which the plaintiffs had plainly alleged they purchased primarily to attain employment in the legal sector. *MacDonald v. Thomas M. Cooley L. Sch*., 724 F.3d 654, 661 (6th Cir. 2013). There is no bar to MCPA claims stemming from the purchase of an undergraduate education, particularly where, as here, Plaintiffs allege that they elected to attend Hillsdale for the prospect of a safe college experience (not for employment reasons). *See* FAC ¶¶ 18, 19.

[21]

programs or were deterred from doing so because of defendant's discriminatory conduct); *A. B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 840 (9th Cir. 2022) (reversing order denying certification of class Title IX retaliation claims, rejecting argument that alleged retaliatory actions were unique to the named plaintiffs because "those actions had a classwide effect" of dissuading others from raising the issue of sex discrimination for fear of retaliation).

Hillsdale cites *Selwood v. Virginia Mennonite Ret. Cmty., Inc.*, for the proposition that retaliation claims are inappropriate for class treatment. Mot. at 12. But *Selwood* involved a plaintiff who "propose[d] to represent a class of employees who ha[d] been injured as a result of discrimination on the basis of their religion" despite the fact that the plaintiff herself did not assert that that she experienced such discrimination. No. CIV.A.5:04 CV 00021, 2004 WL 1946379, at *2 (W.D. Va. Aug. 31, 2004). The plaintiff's claim also involved unique facts and circumstances, including that her employer stated she had been terminated for insubordination. *Id.* at *4.

*     *     *

In sum, at the appropriate time (post-discovery class certification), Plaintiffs will be able to show their proposed class meets all the requirements of Rule 23(a) and 23(b)(2) or 23(c)(4). Moreover, Plaintiffs injunctive relief claims are valid, and all their claims are suitable for class treatment (and indeed have been certified by courts before).

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Hillsdale's Motion to Strike or Dismiss Class Allegations from Plaintiffs' Amended Complaint.

Dated:  April 15, 2024                                     Respectfully submitted,


                                                          */s/ Annika K. Martin*
                                                          _____

                                                          Annika K. Martin
                                                          **LIEFF CABRASER HEIMANN &
                                                          BERNSTEIN, LLP**
                                                          250 Hudson Street, 8th Floor
                                                          New York, NY  10013-1413
                                                          Telephone:  212.355.9500
                                                          Facsimile:   212.355.9592
                                                          akmartin@lchb.com

                                                          Michelle A. Lamy
                                                          Caitlin M. Nelson
                                                          **LIEFF CABRASER HEIMANN &
                                                          BERNSTEIN, LLP**
                                                          275 Battery Street, 29th Floor
                                                          San Francisco, CA  94111-3339
                                                          Telephone:  415.956.1000
                                                          Facsimile:   415.956.1008
                                                          mlamy@lchb.com
                                                          cwoods@lchb.com

                                                          Beth M. Rivers
                                                          Megan A. Bonanni
                                                          Channing Robinson-Holmes
                                                          **PITT MCGEHEE PALMER
                                                          BONANNI & RIVERS PC**
                                                          117 West Fourth Street, Suite 200
                                                          Royal Oak, MI 48067
                                                          Telephone:  248.398.9800
                                                          Facsimile:   248.268.7996
                                                          brivers@pittlawpc.com
                                                          mbonanni@pittlawpc.com
                                                          crobinson@pittlawpc.com

                                                          *Attorneys for Plaintiffs*